ALBANY,
August, 1818.

WILSON
v.
BOEREM.

WILSON *against* BOEREM.

The declarations *in extremis,* of a person who would, if living, be a competent witness, are inadmissible evidence, either in a civil action, or a criminal prosecution, with the single exception of cases of homicide, when the declaration of the deceased, after the mortal blow, as to the fact of the murder, is admitted.

This was an action of *assumpsit,* on a promissory note for 305 dollars and 35 cents, payable in ninety days, drawn by *Thomas Shieffelin,* in favour of the defendant, by whom it was endorsed to *Josiah Brown, Jun.* and by him to the plaintiff. The cause was tried before Mr. J. *Van Ness,* at the *New-York* sittings, in *December,* 1816.

The note, endorsements, demand of payment, and notice, having been proved on the part of the plaintiff, the defendant produced witnesses to prove that the note was endorsed by *Brown* and the defendant, for the accommodation of *Shieffelin,* and delivered to the plaintiff by *Brown,* for the purpose of being discounted by him, but that he had never paid any thing on account of the note, and had pledged it to one *Simmons* for his own debt. The defendant's counsel, in order further to make out the defence, offered to prove the dying declarations of *Brown,* in relation to the note. The evidence was objected to by the plaintiff's counsel, but the judge ruled that the declarations of *Brown,* in *extremis,* were admissible, as to all such facts, as he would be competent to prove, if then living and present. Accordingly, his wife, *Susan Brown,* was called, who testified that her husband died of a consumption, of which he had been ill for some time ; that after he considered himself a dying man, and his recovery hopeless, he in conversation with her, when alone, told her that the note had been drawn and endorsed for the purpose of getting it discounted for *Shieffelin;* that he had delivered it to the plaintiff, and charged him with wrongfully converting it to his own use, by pledging it for a debt, and that the plaintiff had never paid him any thing for the note. The witness also stated, that her husband died about a week after this conversation ; that no physician or clergyman had been with him, near the time that it took place, and that he had afterwards walked about the room. *Charles L. H. Shieffelin,* the son of the maker of the note, testified that *Brown* died on a *Friday,* and that

on the *Sunday* preceding, he called to see him ; that *Brown*, then considered himself a dying man, and was confined to his bed, and that he gave him the same account of the note as he had given to the preceding witness.   *Thomas Shieffelin*, the maker of the note, also testified, that he called to see *Brown*, who said, that the doctor had given him over, and made the same statement to this witness.  .Testimony was produced on the part of the plaintiff, to repel this defence, which it is unnecessary to notice.

The judge charged the jury, that if they believed the note in question had been drawn and endorsed for the special purpose stated by the witnesses on the part of the defendant, and that this was known to the plantiff when he took it, and if they also were satisfied that the note had never been negotiated for a valuable consideration to the plaintiff, but that it had been left with him by *Brown* merely to raise money for the benefit of *Shieffelin*, that then they ought to find for the defendant, otherwise for the plaintiff. The jury found a verdict for the defendant, which the plaintiff now moved to set aside, and that a new trial be granted.

*Sampson*, for the plaintiff, contended, that the evidence of the declarations of *Brown* was inadmissible, being mere *hearsay.*  (*Gilb. L. of Ev.* 6th ed. 135.)  It is a settled rule in the law, that *hearsay* is no evidence.

Nor will the fact, that *Brown* was *in extremis*, when he made the declarations, create any exception to the rule, and make them evidence.  It is true, that some of the elementary writers on the law of evidence, appear to have fallen into that error; and *Phillips*, in his late treatise, (p. 200.) after stating that " the dying declarations .of a person who has received a mortal injury, are constantly admitted in criminal prosecutions," and the reason of the rule, adds, (p. 201.) that " the same kind of evidence, is admissible in civil cases, as well as in trials for murder."  (See also, *M'Nally's Evid.* 174.)   But such evidence was never admitted in a *civil case*, nor in any *criminal case*, except that of *homicide*, and then from *necessity* only.   Mr. *East*, in his treatise of the *Pleas of the Crown*, (vol. 1. 353. 360.) considers the admission of such evidence as peculiar to

the case of *homicide,* and he states the circumstances under which it is admissible in that case. Mr. *Peake,* in his *Compendium of the Law of Evidence,* (p. 15. 3d ed.) also states the same limitations, as to the admission of the dying declaration of the party, in cases of murder, and cites *Woodcock's* case, (2 *Leach C. L.* 563.) and the observations of Lord C. B. *Eyre,* as to the reasons for allowing such declarations to be evidence, under the *peculiar* circumstances of the case. Mr. *Lutterell's* case, (*Rex.* v *Reason* and *Tranter,* 1 *Str.* 499. 6 *St. Tr.* 195. *Foster C. L.* 293.) appears to be the first in which the dying declarations of the deceased were admitted, and that was a very peculiar case, which seemed to justify some relaxation of the strict law of evidence. In the works of the earlier writers on *criminal* law, *Coke, Hale,* and *Hawkins,* no such rule is to be found. *Hale,* (2 *H. P. C.* 52.) refers to the statute of 1 & 2 *Ph. & Mar.* cap. 13. which authorizes magistrates to take the *examinations* of prisoners, and the *depositions* of witnesses produced against them, and to return them to the court of gaol delivery. He cites *Welsh's* case, (2 *H. P. C.* 285.) in which the examination of Mrs. *P.* taken before commissioners, under an act of parliament, was not allowed to be read against *W.* on an indictment, for a forcible marriage of *P.* because it was a proceeding according to the civil law, in a civil cause.

*Hearsay* evidence has sometimes been received on questions of *pedigree, prescription,* or *custom,* depending on general *reputation;* but a late case, (*a*) (*Berkley Peerage, Phillips Ev.* 178.) in the house of lords, in which all the judges delivered their opinions, shows with what extreme caution this species of evidence, even on questions of *pedigree,* is allowed ; and it is never received where the declaration is made *after* a controversy has arisen on the question, *post litem motam,* for the declaration must be made under circumstances which precluded the possibility of any bias or interest operating on the mind of the person whose declaration is offered to be proved.

(*a*) Vid. 4 *Campbell's N. P. Rep.* 401. a report of the *Berkley Peerage Case,* before the house of lords, *May* 13, 1811. Vid. also, *Rex.* v. *Cotton,* 3 *Campb. N. P. Rep.* 444.

In *Wright* v. *Littler*, (3 *Burr.* 1244. 1255.) the declaration of *Medlicott*, as to the forgery, came out on a cross examination, and no objection was made at the trial, and it was allowed under the special circumstances of the case. In *Aveson* v. *Kinnaird*, (6 *East*, 188.) evidence of the declaration of the wife, as to the state of her health, was admitted, to contradict the evidence of a surgeon, who had examined her. These are the cases cited by Mr. *Phillips;* but the evidence was admitted not to prove the declarations of a person *in extremis*, and who if living might have been a witness, but merely to contradict what the same person had, when living, declared.

In *Jackson, ex dem. Coe,* v. *Kniffen*, (2 *Johns. R.* 31.) this court decided, that evidence of the declarations of a testator, *in extremis*, that a will previously executed by him was extorted by *duress*, was not admissible. *Livingston,* J. thought the declarations of a dying person ought never to be received as evidence in *civil* cases, and he doubted whether they ought to be received at all, even in criminal proceedings, unless in the single case where the party injured was the only witness, and his death might otherwise defeat the ends of public justice. In *Gray* v. *Goodrich*, (7 *Johns. Rep.* 95.) the court say, that what a deceased person has been heard to say, except upon oath, or *in extremis*, and when he came to a violent end, never has been considered as competent evidence.

Again ; *Brown*, if living, would not have been a competent witness. He was an *endorser* of the note, and incompetent, not only on the ground of interest, but on the principle which excludes a party to a negotiable paper from invalidating it by his testimony. (*Phillips'* Ev. 50.)

*Van Wyck*, contra, contended, that *Brown*, if living, would have been a competent witness, as his testimony did not go to invalidate the note in its first inception ; (*Woodhull* v. *Holmes*, 10 *Johns. Rep.* 231.) and that evidence of his declarations *in extremis* was admissible. In criminal cases it is undoubtedly the practice to receive such evidence ; and courts are more cautious in admitting evidence in criminal, than in civil cases. The opinion of C. B. *Eyre,* in

*Woodcock's* case, has been cited; and the principle on which such evidence is to be received is very forcibly stated by him. " They are declarations made in extremity, when the party is at the point of death, and every hope of this world is gone; when every motive to falsehood is silenced, and the mind induced by the most powerful considerations to speak the truth; a situation so solemn and so awful, is considered by the law as an obligation, equal to that which is imposed by a positive oath, administered in a court of justice." All men are disposed to assent to the truth of declarations, made under circumstances which afford, perhaps, a higher test of truth, than if made by the party under the ordinary sanction of an oath. It is objected, that there can be no cross-examination in such case. But what is the object of a cross-examination? To elicit the truth. But if the death bed, and the awful situation of the party, affords the strongest test of the truth of what he declares, no other or better test can be desired. We do not say that the evidence is, of itself, conclusive. It is *hearsay* evidence; but where a foundation has been laid for it by other evidence, it ought to go to a jury, either to corroborate or contradict the previous testimony. In *Wright* v. *Clymer* (*S. C.* 1 *Wm. Bl.* 345.) which has been cited, Lord *Mansfield* was of opinion, that the evidence was proper to be left to the jury. The case of *Aveson* v. *Kinnaird* is, also, in point. (*Phillips' Law of Ev.* 201)

THOMPSON, Ch. J. delivered the opinion of the court. Assuming that *Brown* would have been a competent witness, had he been living, and admitting that he was *in extremis*, when the declarations were made which were received in evidence, (of which, however, there is very great doubt,) the only question in the case is, whether such declarations were at all admissible. No case, either in the *English* courts or in our own, has fallen under my observation, where such evidence has been admitted in a civil suit. Such testimony is inconsistent with two fundamental rules in the law of evidence. It is mere hearsay, not under oath, and no opportunity is given for cross-examination; and writers on the law of evidence have, I apprehend, either fallen into a mistake, or been a little unguarded, in laying

down the rule relative to the admission of the dying decla-
ration of a person, even in criminal cases.   *Phillips*, in his
*Treatise*, (p. 200.) says such evidence is constantly admit-
ted in *criminal prosecutions*, and is not liable to the com-
mon objection against hearsay evidence.   If he means to be
understood, that this is a general rule of evidence in crimi-
nal prosecutions, he is not supported by any adjudged case.
It is, I apprehend, confined to the single case of *homicide ;*
and so it seems to be considered by *East*, in his *Crown Law.*
(vol. 1. p. 253.)   " Besides," says he, " the usual evidence of
guilt in general cases of felony," there is one kind of evi-
dence *more peculiar to the case of homicide*, which is the de-
claration of the deceased, after the mortal blow, as to the
fact itself, and the party by whom it was committed.   Evi-
dence of *this sort* is admissible, *in this case*, on the fullest
necessity.   For it often happens, that there is no third per-
son present to be an eye witness to the fact, and the usual
witness, on occasion of *other felonies*, namely, the party in-
jured himself, is got rid of.   Whatever might have been the
ground on which this kind of evidence was first admitted, in
cases of homicide, we find it has long been an established
rule in such cases, and, I may say, in such cases only.   For
wherever this rule is recognized by elementary writers, the
cases referred to in support of it will be found to be those
of homicide only.   (*Stra.* 499.   2 *Leach.* 569. 638.   12 *Vin.*
118.   1 *East's C. L.* 353.)   Baron *Eyre*, in *Woodcock's*
case, considers it an exception to the general rule, which
requires that witnesses should be examined in open court on
*oath*, and an opportunity afforded for *cross-examination.*

   *Phillips*, (p. 201.) in treating of this rule in criminal
proceedings, says, the same kind of evidence is admissible
in civil cases, as well as in trials for murder.   But he is not
supported by any of the cases referred to, or by any other
adjudged cases, that I have found. *Wright, ex dem. Clymer*, v.
*Littler*, (3 *Burr.* 1244. 1 *Wm. Blacks.* 345.) has been urged
in support of this rule.   But a recurrence to the facts will
show that the circumstances of that case were special and
peculiar ; and the admission of the declaration of *Medli-
cott* was not supported under this rule.   Lord *Mans-
field*, in pronouncing the opinion of the court, says, the tes-
timony comes out on the cross-examination of the defend-

ant's counsel, and no objection made to it; and after mentioning the special circumstances of the case, he says, no general rule can be drawn from it; thereby expressly excluding the idea that the evidence was admitted merely as the dying declaration of *Medlicott.* Nor does the case of *Aveson* v. Lord *Kinnaird,* (6 *East,* 188.) which has also been pressed upon the court, in any measure support such a rule of evidence. It was an action on a policy of insurance, on the life of the plaintiff's wife, warranted in good health when the policy was effected, and the dying declarations of the wife, as to her state of health at that time, were admitted; but not as declarations made, *in extremis,* by a person who might have been a witness, if living; for she could not, under any circumstances, have been a witness, if living. The plaintiff had produced a surgeon as a witness, to show, from his examination of her, and what she told him, that she was in a good state of health; and her account to another person of her health, at the same time, Lord *Ellenborough* said, was but a sort of cross-examination of the same witness. That the inquiry was upon the subject of her own health, which was a fact of which her own declaration was evidence. That such declarations are always received upon such inquiries, and must be resorted to, from the very nature of the thing. I think it may safely be affirmed, that no such rule of evidence in civil cases is to be found in practice in the *English* courts; with us there certainly is none such, and wherever it has been in any measure alluded to, it has uniformly been with disapprobation. That the question is still open with us, appears from the case of *Jackson* v. *Vredenburgh,* (1 *Johns. Rep.* 163.) where it is said, that it will be unnecessary to determine whether, under any and what circumstances, the declarations of a competent witness, *in articulo mortis,* can be introduced as legal evidence in a civil cause. In *Jackson* v. *Kniffen,* (2 *Johns. Rep.* 35.) Mr. Justice *Livingston* says, if the declarations of dying persons are ever to be received in evidence, (on which, if *res integra,* much might be said,) yet, in civil cases they never should be admitted. In *Capron* v. *Austin,* (7 *Johns. Rep.* 96.) it is said, that the law requires the sanction of an oath to all parol testimony. It

never gives credit to the bare assertion of any one, however high his rank, or pure his morals; and it is fairly to be inferred from this case, that the court meant to say, that declarations *in extremis* were inadmissible evidence, except in the single case of homicide. Having an opportunity to cross-examine a witness is a high and important right, and ought not to be violated, except from the most imperious necessity; and I am persuaded, that neither principle nor policy requires the adoption of any such rule of evidence in civil cases. The dying declaration of *Brown*, in the case before us, ought not, therefore, to have been admitted in evidence. The verdict must, accordingly, be set aside, and a new trial awarded, with costs, to abide the event.

*Judgment reversed.*