Duling and Others *v.* Johnson and Others.

by a motion in arrest. The verdict was clearly right from the evidence.

Judgment affirmed, with costs.

*O. F. Baker*, for appellant.

*D. E. Williamson*, Attorney General, for the State.

———————◆———————

32   155
165   521

Duling and Others *v.* Johnson and Others.

Evidence.—*Dying Declarations.*—Dying declarations are never admissible as such in evidence except in a certain class of criminal cases.

Same.—*Advancements.*—All declarations of intent made by an ancestor during the execution of a settlement of property among a set of his children are admissible in evidence, to aid in determining whether the purpose of the ancestor was to make an advancement or a gift to each of such children.

Same.—A father of two sets of children, the first set consisting of three, in directing the conveyance of certain lands to two of said first set, the land so received by each being nearly equal in value to a tract which the father had previously caused to be conveyed to the third child of said first set, said, that he desired such conveyance to be made to said two children because their mother had worked very hard and had not lived to enjoy the property, and he therefore desired her children to have a share over and above the other set of children by his second wife.

*Held*, in a suit for partition of other lands, owned by the father at his death, that all said conveyances to the first set of children were gifts.

APPEAL from the Grant Common Pleas.

This was a petition for the partition of real estate by the appellants, William Duling and Matilda Duling, in person, and James P. Wilson and William T. Wilson, by guardian, against the appellees, Hannah M. Johnson (formerly Wilson), Gabriel Johnson, Sarah B. Wilson, and Samuel A. Wilson.

The complaint alleges, that John A. Wilson died, the owner in fee simple of certain lands described, in all about two hundred and sixty-seven acres, leaving as his only heirs-

at-law said Matilda Duling (formerly Matilda Wilson, who has intermarried with said William Duling), James P. Wilson, William T. Wilson, Sarah B. Wilson, and Samuel A. Wilson, his only children, and said Hannah M. Johnson (formerly Hannah M. Wilson, who has intermarried with said Gabriel Johnson), his widow; that said Hannah M. Johnson is the owner by descent from said John M. Wilson, deceased, and entitled to the undivided one-third of said real estate for life, with remainder over to said children of John M.; that each of said five children owns in fee the undivided one-fifth of the remaining two-thirds of said real estate; that said James P., William L., Sarah B., and Samuel A. are minors; that said Samuel A. and Sarah B. are the children of said decedent and said Hannah M., and said Matilda, James P., and William T. are the children of said decedent by a former wife; that said widow and children hold said lands as tenants in common; that the petitioners are desirous of holding their said interests in severalty. Prayer for partition.

The defendant Hannah M. answered, that before her marriage with the decedent he caused one James S. Wilson to purchase certain tracts of land in Grant county, describing them, which land was worth —— thousand dollars, which her said husband caused to be conveyed to said James S. Wilson, who held the same in trust for her said husband, who afterwards, to defraud her of her part as his wife, caused the said land to be conveyed by said James S. Wilson to the decedent's children by a former marriage, the plaintiffs, who still own the same; that said land was purchased with her said husband's money, and was so held in trust for a long time after this defendant's said marriage to said John M. And she demanded that, in addition to her one-third of the lands described in the complaint, one-third of the lands so conveyed to said children should be set off to her, or an amount equal thereto of the lands in the complaint mentioned.

Gabriel Johnson, husband of said Hannah M., answered, disclaiming any interest.

Sarah B. Wilson and Samuel A. Wilson answered by guardian *ad litem*, alleging, in substance, that said John M. caused the lands so held by James S. Wilson to be conveyed to said Matilda and William T., and caused certain other land to be conveyed to said James P.; and that by means of such conveyances to the plaintiffs, said Matilda had received, by way of advancement from the decedent, fifteen hundred dollars, said William T. one thousand dollars, and said James P. fourteen hundred dollars.

The plaintiffs demurred to the answer of Hannah M. Johnson; the demurrer was overruled, and the plaintiffs excepted.

The plaintiffs then replied to the answer of Hannah M., in two paragraphs, first, the general denial; second, that said decedent was not at any time during his marriage to Hannah M. seized in fee simple of the lands so conveyed by James S. Wilson to said children; and that said decedent at the time of his death had no equitable interest in said lands, but had caused the same to be conveyed to his said children upon a good and valid consideration.

The plaintiffs also replied to the answer of said guardian *ad litem*, in two paragraphs, first, the general denial; second, that the several tracts of land mentioned in said answer were caused to be conveyed to plaintiffs, not as advancements, but as unconditional gifts, by their said father, and were so intended by him at the time.

The cause was tried by the court.

The evidence is in the record.

James S. Wilson testified, that his brother, John M. Wilson, the deceased, had been in Grant county, in this State, in 1834, and purchased two tracts of land and returned home to Virginia; that he wanted James S. to come west, and gave him two hundred dollars in money, and gave him the numbers of two pieces of land; that James S. came and found that one of the pieces was entered; that he got num-

bers and, with the money so given him, entered land in his own name; that he had to shave said. money to get land-office money; that this land he conveyed to said Matilda and William T., eighteen or nineteen months before the death of their father; that the land so conveyed to Matilda was worth fifteen or sixteen hundred dollars, and that conveyed to William one thousand dollars; that he paid ·for shaving said money and expenses of entering the land about fifteen dollars of his own money; that he told his said brother that he would make him a deed for the land if he would repay said sum, but not otherwise, and his said brother never requested him to make such deed; that witness told his said brother that, if he would pay expenses, witness would make a deed for said land to said brother's children, but said John M. never told witness to do so·; that afterwards witness was told by his own wife that John wished him to convey the lands to William and Matilda, and he did so, to " suit his own notion."

Hannah M. Johnson testified, that said John M. Wilson, her husband, purchased a tract of land during their marriage and had the conveyance made to James P. Wilson, his son by a former wife; that he paid about fourteen hundred dollars for it; that this was about four years after they were married; that she never joined in any conveyance of this land; that she and her said husband lived together twelve years; that she did not see money paid for this land, but received her information from her said husband, who received the rents of the land while he lived; and that James P. was thirteen years old when the deed was made to him.

William T. Wilson testified, that he knew of the purchase of the land conveyed to James P., but did not remember when it was; that he heard his father say it was for James P. Wilson.

Eveline Wilson testified, that John M. Wilson said to her that he wanted the land deeded to Matilda and William; that she told James S. Wilson about it; that she heard John

say that the reason he had for giving the land to Matilda and William was, that he thought their mother had worked very hard and never lived to enjoy it, and he wanted them to have it, over and above what the second set of children were to get.

One Lucas testified, that John M. Wilson, on his death bed, about eighteen hours before he died, thinking he was about to die, said he was still getting worse; that he wished his brother James was there; that he wanted the boys to stay on the farm, and work, and take care of things as they had been doing, and give Hannah a good support while she lived; that he wanted the two youngest children and all of the children to go to school; that when Mrs. Wilson was done with the place, he wished William to have it, and he asked Mrs. Wilson if she would agree to that, and she said she would, excepting to keep James P.; that he wished Sarah to have one thousand dollars when she should come of age, and the youngest boy eighty acres over the river, which, the witness said, was not one of the tracts deeded to the first set of children.

The deeds to the eldest children were given in evidence.

At the proper time, as appears by bill of exceptions, the plaintiffs objected to the admission of the statements made by John M. Wilson at the time mentioned by the witness Lucas, for the reason that they were made long after the lands were conveyed; but the objection was overruled, and the plaintiffs excepted; and the court allowed the witness to give said statements, only upon the ground that they were *dying declarations.*

The court found, that Mrs. Johnson had no interest in the lands conveyed to the first set of children, but was entitled to one-third, in fee simple, of the lands mentioned in the complaint; that the lands so conveyed were advancements; that Matilda was thus chargeable with an advancement of fifteen hundred dollars, James P. with an advancement of fourteen hundred dollars; and William T. with an advance-

ment of one thousand dollars; and partition of the land in the complaint described was decreed accordingly.

The plaintiffs moved for a new trial. The motion was overruled, and the plaintiffs excepted.

Commissioners were appointed, who, at a subsequent term, reported that they had set off to Mrs. Johnson "sixty-five acres on the east side of the north-west fractional quarter of section nineteen, township twenty-three, north of range nine east, to be cut off by a line parallel with the east line of said quarter; to Sarah B. Wilson the remainder of said quarter, except seven acres in the northern part, her portion being seventy-five acres; to William T. Wilson seven acres out of the north-west quarter of section nineteen, and sixteen acres on the south end of the east half of the west half of the south-west quarter of section eighteen, in all to said William twenty-three acres; to James P. Wilson the middle part of the east half of the west half of the south-west quarter of section eighteen, in all fifteen acres; to Matilda Duling the north end of said east half of the west half of the south-west quarter, being about ten acres; all in township twenty-three, range nine east; to Samuel A. Wilson seventy-eight acres on the north end of the east half of the north-east quarter of section eleven, township twenty-three, range eight east; and the remainder of said tract we divide equally among the older heirs, Matilda Duling, James P. Wilson, and William T. Wilson; which we respectfully submit to the court," &c.

The plaintiffs filed their written objection to the report, alleging, among the grounds of objection, that the report was too indefinite in the description of the different shares set off.

The court overruled the objection, and the plaintiffs excepted.

The plaintiffs moved for a new trial, and then in arrest of judgment, said motions being overruled in their order, to which rulings the plaintiffs excepted.

RAY, J.—It must be assumed that the admission in evidence of the statements made by John M. Wilson, a few hours before his death, regarding the future disposition of his property, as "dying declarations," was an inadvertence, resulting from the little time often given to the judge during the progress of the trial for consideration of the questions he must pass upon. Few rules are more clearly settled than the one excluding all such declarations, except in a certain class of criminal cases. In this case such evidence could not properly be received on that ground; and as it did not tend to prove the motive which had induced the person making the statements to execute, or cause to be executed, the conveyances to the other children, there can be no question that it was clearly irrelevant.

The statement of John M. Wilson, made to Eveline Wilson, that he desired her husband, James S. Wilson, to execute the conveyance to Matilda and William T., because their mother had worked very hard and never lived to enjoy the property, and he therefore desired her children to have a share over and above the other set of children by his second wife, was a very plain declaration that such conveyance was not intended as an advancement, but as a gift. Indeed, James S. Wilson could have held the land as his own, and accounted for the money he had received for the purpose of investing in other lands. His proposal to convey on the payment of his expenses was not accepted by John M. Wilson, and he might have treated the land as his own. But he made the conveyance to the children, and it must be regarded as made for the purpose indicated by the decedent. So, also, this declaration of intent in regard to the first set of children must be regarded in determining whether the conveyance procured to be made to James P. Wilson, the remaining one of the first set of children, of property valued at some fourteen hundred dollars, was intended as a gift or an advancement to him. The land conveyed to Matilda and William T. was of the estimated

value of twenty-five hundred dollars, for the two shares; that to the third child, of the estimated value of fourteen hundred dollars. These facts, taken together with the declared purpose to make a gift to each of the first set of children, over and above what the second set should receive, clearly proves that such conveyance to James P. Wilson was but the result of that purpose, then entertained, though not declared until the later conveyance was executed to William and Matilda. The intent declared was to make a gift to the first set of children, because their mother had not lived to enjoy the result of her toil. That purpose had not been accomplished by the deed he had procured to be made to James P. Wilson, but was fully performed when the conveyance was executed to William and Matilda, making the three children of the first marriage very nearly equal in the amount of property received by each.

It is certainly proper that all declarations of intent made by a parent, during the execution of a settlement of property among a set of his children, should be admitted in evidence to aid in determining whether such purpose was to make an advancement or gift to each of such children. *Woolery* v. *Woolery,* 29 Ind. 249, and authorities there cited.

In our opinion, the finding of the court that the conveyances were intended as advancements was against the evidence, and must, therefore, be reversed. The report of the commissioners should have been set aside, also, on the ground that it was too indefinite, and that the limits of each piece of property could not be determined from such report.

Judgment reversed, and cause remanded for a new trial. Costs here for appellees.

*J. VanDevanter* and *J. F. McDowell,* for appellants.

*J. Brownlee,* for appellees.