No. 10,037.

## MONTGOMERY v. THE STATE.

CRIMINAL LAW.—*Abortion.*—*Prosecution Under Section 1923, R. S. 1881.*— Where death results from the unlawful attempt to produce an abortion, the prosecution should be brought under section 1923, R. S. 1881.

- .SAME.—*Dying Declaration.*—*Evidence.*—In such prosecution, the death of the woman from the unlawful act of the accused gives to the offence the character of felonious homicide, and the dying declarations of the deceased are admissible in evidence; such declarations are not admissible to prove what occurred before or after the act has been done, but the *res gestæ* only, and must be of facts only, and not of mere matters of opinion, and must be such as would have been competent evidence if the dying person had been sworn as a witness.

SAME.—*Inference.*—*Evidence.*—The statement, that "The operation was performed for the purpose of producing an abortion," is an inference, and not admissible in evidence as a dying declaration.

SAME.—*Homicide.*—Dying declarations are admissible only in cases of homicide; but, where death results from an unlawful attempt to produce an abortion, it is an essential ingredient of the crime and the subject of judicial investigation.

Montgomery *v.* The State.

SAME.—The highest office which can be rightfully allotted to a dying declaration is a statement of the unlawful act which occasioned death, naming the time when and the party by whom it was done.

From the Elkhart Circuit Court.

*J. M. Vanfleet,* for appellant.

*D. P. Baldwin,* Attorney General, *J. S. Drake,* Prosecuting Attorney, and *W. L. Stonex,* for the State.

ELLIOTT, C. J.—Appellant was tried and convicted upon a count in an indictment charging him with a violation of section 1923 of the R. S. of 1881. That section reads thus: "Whoever prescribes or administers to any pregnant woman, or to any woman whom he supposes to be pregnant, any drug, medicine, or substance whatever, with intent thereby to procure the miscarriage of such woman; or, with like intent, uses any instrument or means whatever, unless such miscarriage is necessary to preserve her life,—shall, if the woman miscarries or dies in consequence thereof, be fined not more than five hundred dollars nor less than fifty dollars, and be imprisoned in the State prison not more than fourteen years nor less than three years." It is charged in the indictment, and there is evidence tending to prove, that the woman upon whom the wrongful act is alleged to have been committed died from its effect.

Over the appellant's objection, the State was permitted to give in evidence the dying declarations of the woman. This ruling presents the controlling question in the case.

It is contended on the part of the prosecution that the death of the woman is the gravamen of the offence, and that, where death results from an unlawful act in producing abortion, the crime is homicide. In support of the principal contention, it is argued that the Legislature had authority to specifically define and prescribe punishment for an unlawful act resulting in death, and that when this authority is exercised the prosecution should be under the statute specifically defining the crime. The case of *The State* v. *Barker,* 28 Ohio St. 583,

strongly supports this last proposition.    In that case the court said : " Had this cause proceeded to trial upon the indictment for manslaughter, and had the evidence shown that the death of the woman was occasioned by administering drugs, or using instruments to produce an abortion, there could have been no conviction for manslaughter, because the evidence showed that another crime had been committed, for which there was a separate and specific punishment.    The unlawful killing was done, it is true, while the slayer was in the commission of an unlawful act, but that unlawful act, when producing death, is a distinct offence, and must be punished as such."    The reasoning of the court in *Smith* v. *The State*, 28 Ind. 321, is strongly in the same direction, where it was said : "Prior to the passage of the act alluded to, there is no question that the evidence would have made a case of larceny.    The act is very loosely and carelessly framed.    The language of the first section would, perhaps, make every felonious taking by a hired servant of the goods of his master embezzlement, no matter whether the servant had the custody of the goods or not; and, as the punishment prescribed is not the same as for larceny, there is great force in the proposition that larceny could no longer be maintained in such cases."    It is true of the present statute, that a homicide committed in the prosecution of an unlawful act is punished differently from that resulting from the use of an instrument or the administration of drugs for the purpose of producing an abortion.    Proceeding still further in this general direction is the case of *Jones* v. *The State*, 59 Ind. 229, where it is held that where the evidence shows an offence to have been embezzlement, there can be no conviction of larceny.    It is important to keep in mind that in Indiana there are no other crimes than such as are defined by statute.    As all crimes are statutory, all prosecutions should be under the statute by which the offence is defined and the punishment prescribed.    We agree with the State, that the appellant was rightly prosecuted under section

1923, although death resulted and although the act which caused it was an unlawful one.

It has long been settled that dying declarations are admissible only in cases of homicide. Starkie says of the rule admitting dying declarations: "But so jealous is the law of any deviation from the general rule, that it confines the exception to the necessity of the case, and only renders such declarations admissible when they relate to the cause of death, and are tendered on a criminal charge respecting it." Starkie Ev. 32. The generally accepted doctrine is that stated in *Rex* v. *Mead*, 2 B. & C. 605, where it was said that they are only admissible "where the death of the deceased is the subject of the charge, and the circumstances of the death the subject of the dying declaration." Wharton's Crim. Ev., sec. 288; Roscoe's Crim. Ev., p. 32; 1 Greenl. Ev., sec. 156. This court has adopted and enforced this principle. *Binns* v. *The State*, 46 Ind. 311; *Duling* v. *Johnson*, 32 Ind. 155; *Morgan* v. *The State*, 31 Ind. 193. It has been often decided, that in prosecutions for producing an abortion, dying declarations are not admissible. *Rex* v. *Lloyd*, 4 C. & P. 233; *Wilson* v. *Boerem*, 15 Johns. 286; *Regina* v. *Hind*, 8 Cox C. C. 300; *Wooten* v. *Wilkins*, 39 Ga. 223. If the prosecution were for producing an abortion, and death were not an essential ingredient of the crime, our way would be plain. We should be compelled to declare that the evidence was incompetent.

There are peculiar features distinguishing the case from one where the only charge is that an abortion was produced by the accused. The statute makes death an element of the offence, and death is, therefore, the subject of judicial investigation. The death was the result of an unlawful act, for to produce the abortion was expressly forbidden by law. If there were no special statutory provision upon this subject, the crime of which the appellant is accused would have been a felonious homicide. Blackstone says: "So also if one gives a woman with child a medicine to procure abortion, and it operates so violently as to kill the woman; this is murder in

the person who gave it." 4 Bl. Com. 201. Lord Hale lays down the same doctrine. 1 Hale P. C. 430. In a work of great authority it is said : " Hither also may be referred the case of one who gave medicine to a woman ; and that of another who put skewers in her womb, with a view in each case to procure an abortion, whereby the women were killed. Such acts are clearly murder." The same doctrine is declared by Bishop. 1 Bishop Crim. L. 328. In the case of *The State* v. *Moore*, 25 Iowa, 128, the authorities are reviewed, and it was held that where death resulted from an abortion, the person using the means by which it was produced was guilty of murder in the second degree.

It is clear that if there were no statute expressly defining the offence of which the appellant was convicted, he might, upon the theory that the evidence established the acts charged against him, have been convicted of manslaughter. The elements of our statutory definition of that grade of felonious homicide are present, the commission of an unlawful act, and death resulting from it. But, as we have seen, the State was bound to prosecute under the statute specifically defining the offence.

Is the offence any the less homicide because of the prosecution being under one statute rather than another? Is the manner of the death any the less the subject of investigation than it would have been if the indictment had charged manslaughter or murder? The case is entirely unlike a prosecution solely for producing an abortion; there death is not a material element of the offence; here it is. In the class of cases referred to death is no part of the body of the crime. In the case in hand the statute expressly makes it an essential ingredient, and the manner of the death is an important and controlling enquiry. All the statutory elements of an offence must be charged, and they must be proved as charged. *The State* v. *Wright*, 52 Ind. 307. As the indictment charged that death resulted from the wrongful act, and as death is a statutory element of the charge, it became the direct subject of investigation.

If the statute had in express terms declared that the offence should be deemed murder or manslaughter, the evidence would have been competent. Can it make any difference that the statute either gives the offence no name or names it something else than murder or manslaughter? Courts are to look to the substance of the offence defined; they are not to be guided by mere names. If, in reality, the offence is homicide and the subject of enquiry the manner of the deceased's death, the settled rules of evidence which prevail in such cases should be enforced. Wisconsin has a statute very similar to ours. The principal difference between the two statutes is that the former declares that the person producing the abortion which results in death shall be deemed guilty of manslaughter. It was held in *State* v. *Dickinson*, 41 Wis. 299, that, in a prosecution under the statute referred to, dying declarations were admissible. It was there said, in concluding a review of the authorities, that "These authorities show that the offence described in section 11, where the death of the mother ensued from the unlawful act, was murder at common law; and that the statute really reduced the grade of the offence to manslaughter in the second degree. And it is entirely clear that the dying declarations would have been competent evidence at common law, where the death of the deceased was, as in this case, the subject of the charge and judicial enquiry, and the declarations relate to the circumstances of the death. Upon that point it seems to us there is no room for doubt. The fact that the offence with which the defendant is charged has been mitigated, does not change the rule of evidence." The statute of Ohio is somewhat like ours, and it was held in *The State* v. *Harper*, 35 Ohio St. 78, that the dying declarations of the deceased were not competent. The ruling is placed upon two cases, *Regina* v. *Hind*, 8 Cox C. C. 300, and *People* v. *Davis*, 56 N. Y. 95. The first of these cases was a prosecution solely for feloniously using instruments upon a woman with intent to produce an abortion, and in which death was not an element of the offence. It is obvious that the case in hand is

very different from that cited.   In the case of *People* v. *Davis*, the court held that the dying declarations were not admissible in a prosecution under a statute very like ours.   The reasoning of the court upon this point does not command our assent. We quote from the opinion :   " Such evidence is admissible, in cases of homicide, only where the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of the dying declarations.   (1 Greenleaf's Ev., sec. 156, and cases cited in note ;  *Wilson* v. *Boerem*, 15  J. R. 286.)    This is the settled rule, and it is unnecessary to discuss the reasons upon which it is founded.   Applying the rule to this case, the declarations were not admissible.   The charge against the prisoner was not homicide in any degree.   The crime charged against him is that of persuading the deceased to submit to the use of an instrument upon her person, and to take drugs with intent to produce her miscarriage—in consequence of which the death of the child, and her own, were produced.   The death of the deceased was not a necessary ingredient of the crime ;  that of the child was sufficient to make the offence a felony.   The act alleged to have been perpetrated by the prisoner was a crime under the third section of the statute, in the absence of the death of the mother or child." It seems to us that this entire reasoning rests upon an undue assumption.   The statute expressly makes the death of the woman an essential ingredient of the offence.   If there were no statute upon the subject, the crime would unquestionably have been murder, and we can not perceive that it loses its character because the statute classifies the offence differently and prescribes a milder punishment.   We think that the unlawful act possesses all the distinctive and essential features of felonious homicide, and that to declare that it is not homicide is to sacrifice the substance to the shadow. Whether the statute characterizes the act as a felonious killing or not, is immaterial, if it plainly appears that it is such. If the result of the unlawful act is the subject of enquiry, then surely, in such a case, the manner of death must be.

The offence charged in this count of the indictment could not have been made out without evidence of the death of the woman. It may be true that some other charge could have been sustained without such evidence, but the question is not affected by that consideration. If, then, it was necessary to prove death, that subject was a material and controlling enquiry. The death of the woman from the unlawful act of the accused gives to the offence the character of a felonious homicide, and we think this character is not changed by the fact that the specific offence is described in a separate section of the criminal code, and a milder penalty affixed. The characteristic elements of the crime of murder are present, and the reason for applying the rule is quite as plain as in any imaginable case of homicide.

We conclude, where death results from the unlawful attempt to produce an abortion, that death, is the subject of enquiry, and that dying declarations are competent. If we adopt any other view, we shall sacrifice principle to a mere form of words, and give an effect to a statute, intended to secure punishment by an explicit definition of an offence, exactly the reverse of what its framers intended. We regard the statute as clearly intending that death shall be deemed a controlling element of the offence, and in this respect it differs from the statutes of New York and Ohio, as construed by the courts of those States. Under the section of the statute here receiving examination, there is no offence at all unless an abortion is actually produced, or the death of the woman ensues. One or the other of these results must follow the unlawful act. The indictment charges that death resulted. There is no charge that a miscarriage was produced. The material questions, therefore, were, did the accused commit an unlawful act, and did that unlawful act cause the woman's death? Nothing can be clearer than that, if the State had not proved the death, no conviction could have been had. Death was, therefore, the subject of the charge and of the investigation. It was the subject of the charge in such a material manner as that no

conviction could have been had without proof being made of the death. Proving the unlawful act and proving its result in reality proved a felonious homicide. If the crime is, in fact, homicide, then the case is within the rule; certainly bodily within the principle upon which the rule rests.

Specific objections were made to the statement of the dying woman, and these now require consideration.

It is undoubtedly the law that the statements must be such as would have been admissible had the dying person been sworn as a witness. A statement in a dying declaration, which a witness upon the stand would not be allowed to make, is not competent. Jones v. The State, 71 Ind. 66; Binns v. The State, 46 Ind. 311. Matters of opinion contained in a dying declaration are not admissible. Whart. Crim. Ev., sec. 294.

It is earnestly contended that the sentence contained in the statement reading as follows: "The operation was performed for the purpose of producing an abortion," should have been excluded. We think this position must be sustained. What the purpose of an act was is an inference from facts, and witnesses must state the facts and not their conclusions. A witness would have been required to state what was said and done. Facts are to be stated by witnesses; inferences to be made by the jury. This rule should be applied with jealous care to dying declarations. As the accused can not cross-examine, there is no means of testing the correctness of the conclusion. It may be entirely without any foundation in fact. But we need not discuss this question, for it is well settled that dying declarations must speak to facts only, and not to mere matters of opinion. Binns v. State, supra; Roscoe's Crim. Ev. 32; Whart. Crim. Ev., sec. 294; Warren v. State, 35 Am. R. 745.

Dying declarations are admisssible to prove what was done at the time of the commission of the unlawful act which caused death, but they are not admissible to prove what occurred before or afterwards. The cases of Jones v. State, supra, and Binns v. The State, supra, declare that they are not competent for the purpose of proving what occurred anterior to the time

the act which produced death was done, and this doctrine is well supported by the text-writers and the adjudged cases. *McHugh* v. *The State*, 31 Ala. 317; *Barnett* v. *The People*, 54 Ill. 325; *Mose* v. *The State*, 35 Ala. 422; *Nelson* v. *The State*, 7 Humph. 542. Wharton says: " Dying declarations are admitted, from the necessity of the case, to identify the prisoner and the deceased, to establish the circumstances of the *res gestœ*, and to show the transactions from which the death results." Whart. Crim. Ev., sec. 278. Matters which do not form part of the *res gestœ* are not provable by dying declarations. The rule is confined to a statement of the circumstances connected with the fatal act and forming part of the same transaction. It is quite well settled that what occurs before or after the act has been done does not constitute a part of the *res gestœ*, although the interval of separation may be very brief. *Jones* v. *State, supra; Wheeler* v. *State*, 14 Ind. 573; *Binns* v. *The State*, 57 Ind. 46; *Bland* v. *The State*, 2 Ind. 608; *Field* v. *The State*, 57 Miss. 474; S. C., 34 Am. Rep. 476 and note. In the case at bar, statements were included in the dying declaration, of the condition of the woman several days after the unlawful act was committed, and also of a fact entirely distinct from the act itself. In admitting these statements the court plainly erred.

We do not mean to question the soundness of the rule, that evidence may be given of expressions of present physical pain or suffering. On the contrary, we fully recognize and approve that rule. Such evidence, however, must come from a witness who speaks from the stand, or in some authorized manner, and not in the form of dying declarations. A person dying from the effects of an unlawful act committed by another may detail the circumstances of that act, but can not describe his condition hours or days after the act was done. Witnesses may describe the condition of the injured person, and may repeat expressions uttered by the sufferer indicative of present pain, but such descriptions and such expressions can not be put into the form of dying declarations. The highest office which can be

rightfully allotted to a dying declaration is a statement of the transaction which occasioned death. Beyond this it can not be extended without an invasion of settled and salutary principles. In so far as the declarations of the deceased stated the unlawful act, named the time when and the party by whom it was done, they were competent; but what was stated outside of this limit was incompetent.

Other questions than those considered are discussed, but, as the case must be reversed for the errors pointed out, we do not deem it proper to discuss them.

Judgment reversed. The clerk will enter the proper order for the return of the prisoner.