## NUNNALLY v. MAIL & EXPRESS CO.

(Supreme Court, Appellate Division, First Department. June 15, 1906.)

LIBEL—ACTION—PLEADING—ANSWER.

In an action for libel, charging plaintiff with murder and robbery, a separate defense in the answer, alleging that a certain person just before his death had stated that the plaintiff had given him "knockout drops," was demurrable.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Libel and Slander, §§ 219–226.]

Houghton, J., dissenting.

Appeal from Special Term, New York County.

Action by Florence Nunnally against the Mail & Express Company. From an interlocutory judgment sustaining a demurrer to the second defense of the answer, defendant appeals. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and HOUGHTON, JJ.

Charles L. Burr, for appellant.
George H. D. Foster, for respondent.

PATTERSON, J. The defendant appeals from an interlocutory judgment sustaining a demurrer to the second separate and distinct defense set up in its answer. The action was brought to recover damages for an alleged libel printed in a newspaper published and circulated by the defendant. The substance of the libel is that the plaintiff committed the crimes of murder and robbery, the victim of both offenses being a young man by the name of Melles. The article complained of charges that a poison called "knockout drops" was administered to Melles with the intention of robbery, and the intimation is made that the crime of robbery had been committed, and the article sufficiently charges that the plaintiff was guilty of both crimes. The defendant in its answer admits the ownership of the newspaper and the publication of the article alleged to be libelous, and then proceeds to set up in the second defense matter claimed to be in justification. It is alleged in that defense that the plaintiff was married to one Lustig, and that while so married she lived at various places in the city of New York with Melles as his wife; that she, another woman, and Melles dined at a certain house in the city of New York on the evening of March 5, 1904, and spent the evening together; that early in the morning of March 6th Melles went to his father's apartment in New York, and after reaching such apartment was taken sick and had convulsions; that Dr. Buffum was sent for, who found Melles in a state of coma, and exhibiting symptons of having been poisoned by chloral hydrate or "knockout drops"; that this physician questioned Melles, "and was told by him that the plaintiff had poisoned him; that said Melles mentioned this plaintiff by name, and gave her address to Dr. Buffum, and stated that 'she had done for me'; that before dying, and while sick, in the presence of his said father and sister, and believing and knowing that he was about to die, said Melles repeatedly called this plaintiff by name, and said she had done for him; that she

had poisoned him, and that she was responsible for his condition; that said Melles further informed Dr. Buffum that he had quarrelled with plaintiff; that she wanted to get him 'out of the way,' and that she had that night given him something to get rid of him; that on March 6, 1904, and while said Melles was seriously and dangerously ill, the plaintiff herein telephoned to the said apartment where said Melles then was, and inquired after said Melles, and asked as to his condition; that thereafter and in the afternoon of March 6, 1904, said Melles had more convulsions and died; that Dr. Buffum reported on the death of said Melles to Gustave Scholer, a coroner of the city of New York, an informed the police of the Thirty-First precinct of the death of said Melles, stating that the circumstances surrounding said death were suspicious, and that said Melles may have died from chloral hydrate or cocaine poisoning." It is further stated in the second defense that the family of Melles informed the police of the circumstances of the young man's death, and also stated in the course of the official investigation that Melles had been robbed immediately prior to his arrival at his father's house.

This second defense must be regarded as entire. It is not pleaded as a partial defense, but it is sought thereby to justify the charge of poisoning. We think it may be properly said that the article complained of contains two libels, for two separate crimes are charged. It is evident that no justification of the charge of robbery is pleaded in this second defense, but if it is good at all as a plea in justification it would be sustainable as to the charge of murder. Lanpher v. Clark, 149 N. Y. 472, 44 N. E. 182. But we agree with the court below that it is not a good plea in justification. It is not set forth that the poison was administered to Melles by the plaintiff, and while it is not necessary that the pleader should state in so many words that the charge is true, it is necessary in a plea in justification that the particular facts and circumstances relied upon to establish the truth of the charge be set forth in the pleading. Robinson v. Hatch, 55 How. Prac. 55; McKane v. Brooklyn Citizen, 53 Hun, 132, 6 N. Y. Supp. 171; affirmed 117 N. Y. 634, 22 N. E. 1129; Van Wyck v. Guthrie, 4 Duer, 274; Tilson v. Clark, 45 Barb. 178. The facts must be stated, and not the evidence of those facts. Bail v. Evening Post Pub. Co., 38 Hun, 11. All that is alleged in this second defense is hearsay evidence that the plaintiff adminstered chloral hydrate or "knockout drops" to Melles, and that evidence consists of so-called "dying declarations" of Melles; in other words, the charge of murder is claimed to be true because Melles on his deathbed, and in circumstances which may or may not have made those declarations admissible on a trial for homicide, stated that the plaintiff had administered poison to him. The justification is sought to be made through the declaration of Melles, and not upon an allegation of facts tending to show that those declarations were true, and that poison actually had been administered by the plaintiff. Those declarations of Melles do not even constitute evidence in a civil action. It is settled law that what are called "dying declarations" are admissible in evidence only on the trial of an indictment for homicide or in a prosecution for homicide, and they are not admissible as evidence in a civil action.

In Waedele v. N. Y. Central & Hudson River R. Co., 19 Hun, 73, it is said that it is well settled that dying declarations can be received only on the trial of an indictment for homicide.    In Wilson v. Boerem, 15 Johns. 287, it is said the declarations in extremis of a person who would, if living, be a competent witness, are inadmissible evidence either in a civil action or a criminal prosecution, with the single exception of cases of homicide.    In Thayer v. Lombard, 165 Mass. 174, 42 N. E. 563, 52 Am. St. Rep. 507, it is said that "the admission of the declarations of a deceased person on the ground that they are dying declarations is by the common law confined to prosecutions for homicide, and there is no statute which makes them evidence in civil actions." There is no law of this state which allows dying declarations to be given in evidence in a civil action, although by statute they may now be given in evidence in prosecutions for the crime of abortion.    It is not claimed by the appellant that this defense should be retained as setting up matter in mitigation.

The demurrer was properly sustained, and the interlocutory judgment should be affirmed, with costs, with leave to defendant to amend on payment of costs in this court and in the court below.    All concur, except HOUGHTON, J., who dissents.

HOUGHTON, J.    I dissent on the ground that the answer sets forth a justification at least of the charge of meretricious relations with Melles, and is sufficient in law on demurrer.

INGRAHAM, J. (concurring).    Section 507 of the Code of Civil Procedure provides that a defendant may set forth in his answer as many defenses as he has whether they are such as were formally denominated legal or equitable; and section 508 provides that a partial defense may be set forth as prescribed in the last section, but it must be expressly stated to be a partial defense to the entire or to one or more separate causes of action therein set forth.    Upon a demurrer thereto the question is whether it is sufficient for that purpose.    Matter tending only to mitigate or reduce damages in an action to recover for a breach of a promise to marry, or for a personal injury, or an injury to property, is a partial defense, within the meaning of this section.    By subdivision 9 of section 3343 of the Code, a personal injury includes a libel. A justification of a portion of a libel is not a complete defense to the whole cause of action.    When the publication charges a plaintiff with several specific acts, any one of which are libelous per se, an action brought upon the publication as a whole is a single cause of action, and not a separate cause of action ·as to each specific charge.    An action which alleges a justification as to some of the charges contained in the libel, and does not attempt to justify as to others, is not a justification for the whole libel, consequently not a complete defense to the whole cause of action; and therefore, under section 508 of the Code, upon a demurrer to such a defense, it is not good as a defense to the action, and not good as a partial defense, as it is not pleaded as such.

I concur, therefore, with Mr. Justice PATTERSON that the defense being pleaded as a separate and distinct defense, and it not being a defense to the whole cause of action, it is not good on demurrer.