NUNNALLY v. NEW YORKER ZEITUNG PUBLISHING & PRINTING CO.

(Supreme Court, Appellate Division, First Department.   January 11, 1907.)

1. LIBEL—ACTION—PLEADING—ANSWER—SUFFICIENCY.

In an action for libel, charging murder, robbery, and unchastity, a defense not set up as a partial defense, nor in mitigation, but as a general defense in justification, which only sets up matter in justification of the charge of unchastity, is insufficient on demurrer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, § 225.]

2. SAME—COMPLAINT—SUFFICIENCY.

A complaint for libel, based on a newspaper article stating that a woman whose name was not mentioned was guilty of murder, robbery, and unchastity, which alleges that the article was written of and concerning plaintiff, is not demurrable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, § 188.]

Houghton, J., dissenting.

Appeal from Special Term, New York County.

Action by Florence Nunnally against the New Yorker Zeitung Publishing & Printing Company. From an interlocutory judgment overruling demurrers to the fourth and fifth defenses in the amended answer, plaintiff appeals. Reversed, and demurrers sustained, with leave to amend.

See 97 N. Y. Supp. 911.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

George H. D. Foster, for appellant.

Benno Loewy, for respondent.

PATTERSON, P. J.   This appeal is from an interlocutory judgment overruling demurrers to the fourth and fifth defenses set up in the amended answer in this action, which was brought to recover damages for an alleged libel printed in a newspaper belonging to and circulated by the defendant.   The article was printed in the German language, and what appears to be a translation of it is annexed to the complaint.   It begins with headlines printed in large type:

"Dying Man Makes Accusation.  Why Did Melles Die?  Blamed Shortly Before His Death a Woman.  Was It Poison or Alcohol?  Coroner Scholer of the Opinion That There must be a Crime Behind It."

The article then proceeds to state:

"The police have once again a case for elucidation before them, which is surrounded by suspicious circumstances, as to who is responsible for the death of the theatrical agent Leon Melles."

It proceeds further to state that Melles died, in the opinion of a Dr. Buffum—

"From the effects of poison, apparently a mixture of chloral and cocaine, which was given to him as 'knockout drops.'  A half hour before his death he cried out, 'Take that woman away from me!  She has done it!'  Then again he called: 'I wish to see that woman!  She is responsible for this!'  and

during his death struggle he cried: 'There she is again!' and threw up his hands, as if he wished to ward off a blow. * * * Shortly before his last gasp, he gave the name and address of a young woman with whom he had been intimate for a year, as he himself and his father explained. Her identity is not made known by the police and the coroner, and it is said only that she is employed in a wholesale house down town."

It further states that:·

"In a lucid moment Melles said: 'The last thing which I can remember is, that I was with the woman in my room in Twenty-Eighth street.' "

And, further, that:

"After Coroner Scholer had heard the statements of Dr. Buffum, of the father and of the two sisters of the dead man, he came to the conclusion that there must be more behind the matter than the accusation made against the girl. The contradiction resulted from it, that the sweetheart, according to all testimony, was very devoted, but that he, nevertheless, had been robbed of his watch and his money when he came early yesterday to his father's home, where he arrived, apparently intoxicated, about 3 o'clock.

"Early in the morning, after the return of Melles, his father was awakened by his son groaning, and sighing, and found him dying.

"He sent for Dr. Buffum, who diagnosed the case as one of narcotic poisoning, and gave him a sedative. * * * Twice yesterday a woman's voice called up Mr. Melles on the telephone, and asked him whether Leon had arrived home safe. When she was told in the afternoon, that he was in a very critical condition she said that she would call on him in the evening. A policeman waited for her appearance, but she did not appear, nor did she use the telephone again."

Although her name is not mentioned, the plaintiff makes the allegation that the alleged libel was printed of and concerning her. It contains an accusation of murder and robbery. It also indicates that Melles and the plaintiff had illicit relations with each other.

The fourth and fifth defenses interposed in the answer contain long and elaborate statements, which are, perhaps, sufficient as pleading matter in justification of the charge of unchastity of the plaintiff; but they do not in any way justify the charges of administering poison or of robbery. These defenses are not set up as partial defenses, nor in mitigation. They must be regarded as having been general defenses in justification. Their insufficiency as such is not open to discussion in this court. It was held in Nunnally v. Mail & Express (decided June 15, 1906) 99 N. Y. Supp. 647, that where, in an action of libel, a defense is pleaded as a separate and distinct defense, and does not go to the whole cause of action, but is merely partial, such defense is not good on demurrer; and for that reason the interlocutory judgment overruling the demurrers in the present action was wrong.

It is claimed, however, that the demurrers were properly overruled because the complaint was demurrable, and that, upon demurrer to an answer, the defendant may attack the sufficiency of the complaint. Applying that rule, we think the complaint was sufficient. Its allegation that the article complained of was published of and concerning the plaintiff, although her name was not mentioned, was sufficient. Nunnally v. New Yorker Staats Zeitung, 111 App. Div. 482, 97 N. Y. Supp. 911, affirmed in Court of Appeals, 186 N. Y. ——, 78 N. E. 1107. The matter complained of here is substantially the same as that in the case cited, and is libelous per se. The plaintiff alleges that it was written of and

concerning her, and in connection with that allegation she may make direct proof that she was the person to whom reference was made. The case last cited was not decided upon the allegation contained in the complaint therein that the plaintiff was discharged from her employment by reason of the publication in the New Yorker Staats Zeitung. It was said in the opinion that, assuming that the libel was so general.in its character that it might apply to any of a great number of persons and was only made to relate to the particular plaintiff by adoption of it as applicable to herself, then the complaint contained a sufficient allegation to show its direct application to her.

The interlocutory judgment must be reversed, with costs, and the demurrers sustained, with costs, with leave to the defendant to amend the fourth and fifth separate defenses (if it is so advised) within 20 days from service of a copy of the order to be entered upon this decision, upon payment of costs in this court and in the court below.

INGRAHAM, McLAUGHLIN, and CLARKE, JJ., concur.

HOUGHTON, J. I dissent, on the ground that the answer sets forth a justification at least of the charge of meretricious relations with Melles, and is sufficient in law on demurrer.