The State of Iowa v. Nettlebush.

Reversed.

## THE STATE OF IOWA v. NETTLEBUSH.

1. **Evidence:** DYING DECLARATIONS. That the deceased did not give a complete narrative of all that occurred or might be very legitimately supposed to have occurred, constitutes no objection to the competency or sufficiency of dying declarations, if it fairly appears that he said all he desired to say and fully completed his declarations.

*Appeal from Muscatine District Court.*

THURSDAY, APRIL 12.

INDICTMENT FOR MURDER. — Trial to a jury, verdict, guilty of manslaughter and judgment accordingly, with sentence to eighteen months' imprisonment in the penitentiary, and to pay a fine of one hundred dollars and costs. The defendant appeals.

*Henry O'Connor* for the appellant.

*F. E. Bissell,* Attorney-General, for the State.

COLE, J. — There were no objections made to the indictment, to the introduction of evidence, or to the instructions to the jury. After the verdict was rendered, the defendant filed a motion for a new trial based upon the ground of the insufficiency of the evidence to sustain the verdict. This is the only question for us to determine.

1. EVIDENCE: dying declarations.

The deceased was a grocer, and had the defendant in his employ, and was, at the time of the killing, and had been for several years, boarding with the defendant's mother. The deceased was shot in the abdomen, about half past five o'clock in the morning of the 24th day of February, 1865, and died at about three o'clock in the afternoon of the same day. At the time of the shooting, which was about daybreak, the deceased was at the front door or in the hall of the house of the defendant's mother. No person is shown or claimed to have been in the house at the time, except the deceased, the defendant, his mother and a young sister about twelve years old. By the testimony of the mother and sister, it appears that the mother was engaged in building a fire and cleaning the boots of the deceased.

The sister had just awakened the defendant, who was sleeping up stairs, and she had come down stairs for a dress, which she was putting on. About this time the deceased came from the hall into the room where the mother was, and exclaimed that he was shot.

The defendant went first for his brother, living on the same lot, and then for two physicians; he was then sent three different times by the deceased to his grocery store for articles he desired, and was in the room where deceased lay, several times during the forenoon and up to his death. The deceased was conscious from the first of the mortal character of the wound, and several times during the day declared to as many persons, and sometimes in the presence of defendant, that defendant shot him. The defendant made no reply. Once the deceased was asked whether the shot was accidental or intentional, and he replied that it was intentional. The defendant was asked once by his mother in the presence of others, if he had shot deceased, but he made no reply.

The deceased said to the justice of the peace, who was drawing his will, that "they all did it," and on being asked "who all?" he said "Mrs. Nettlebush and Tony, but Tony shot me." He then wanted to rest a little. Afterwards he said that he and defendant had some trouble that morning, and Mrs. Nettlebush had a stick of wood, and he was going to punish defendant when defendant shot him. But he repeatedly stated that he wanted nothing done with defendant about it. After the death of the deceased one of the physicians told defendant that he was dead and thereupon defendant straightened himself up and said, " thank God."

This is but a meagre and imperfect statement of the evidence, but it is sufficient to show its general character, and that there is such a conflict of statement and such a total absence of any evidence pointing to, or intimation of any

other possible guilty party, as prevents any interference on our part by way of setting aside the verdict on the ground of insufficient evidence to sustain it, even under the rule as stated in *The State of Iowa* v. *Tomlinson*, 11 Iowa, 401.

But it is claimed that the dying declarations of the deceased cannot constitute any sufficient basis for the verdict, because it is evident from the declarations themselves that they do not constitute a complete narrative. When the dying declarations offered are incomplete by reason of death intervening, or temporary inability suspends their utterance which is never renewed, or where he is interrupted by the entrance into the declarant's presence of some person to whom he does not wish to make the declaration, and therefore stops to await the withdrawal of such person, but fails afterwards to complete it, in such cases and many others which might be enumerated, the dying declaration could not be received as evidence, and could not constitute a sufficient basis for a verdict.

In this case, however, it does not appear but that deceased said all he desired to say, and fully completed his declarations. That he did not give a complete narrative of all that occurred, or might be very legitimately supposed to have occurred, constitutes no objection to the competency or sufficiency of the dying declarations. 1 Greenl. Ev., §§ 159, 161; *Vass* v. *Commonwealth*, 3 Leigh. (Va.), 786.

Affirmed.