Boyle v. The State.

No. 12,617.

BOYLE v. THE STATE.

CRIMINAL LAW.—*Evidence.*—*Dying Declarations.*—A dying statement made by the victim of a homicide, that the defendant had no reason that he knew of for the perpetration of the crime, is the statement of a fact which the declarant would have been allowed to make had he been a witness on the stand, and is admissible in evidence. ZOLLARS, J., dissents.

SAME.—*General Character of Rule.*—The rule governing the admission of dying declarations is the same in all cases, whether the defence is insanity, self-defence or an *alibi*.

SAME.—The name of the person who committed the homicide, as well as the name of his victim, may be proved by the dying declarations of the latter.

SAME.—*Cross-Examination of Defendant.*—A defendant in a criminal case who elects to testify as a witness is to be treated, so far as the cross-examination is concerned, as any other witness.

SAME.—*Evidence.*—*Cross-Examination.*—While the cross-examination of a witness must be confined to the subject opened by direct examination, this rule does not restrict such cross-examination to the specific facts developed by the direct examination; and when a subject is once entered on in the examination in chief, it is opened to a full and detailed investigation on cross-examination.

SAME.—*Instructions to Jury.*—Where an instruction stands alone upon one material point, neither explained nor qualified by any others, and erroneously expresses the law, there should be a reversal; but where it forms one of a series bearing upon a given question, and taking the entire series together the law is correctly stated, the rule is otherwise.

SAME.—*Testimony of Defendant.*—An instruction to the jury in a criminal case, where the defendant has testified, to the effect, "that such testimony is to be received and weighed as in the case of the testimony of any other witness, and if in such case the defendant has testified to the commission of any other or different crime from the one for which he is being tried, you will not, nor have you the right to, consider such testimony for the purpose of punishing him for the crime here charged, nor must you talk about it in your jury room for that purpose, nor permit it to prejudice you, or bias your judgment against the cause of the defendant. But you may consider such evidence, if any there be in this case, in determining what credibility should be given to the defendant's testimony," is not erroneous.

SAME.—*Murder.*—*Manslaughter.*—*Provocation.*—An instruction which directs the jury that mere words do not constitute such a provocation as will reduce an unlawful killing from murder to 'manslaughter, is not erroneous.

Boyle *v.* The State.

Same.—*Murder in Second Degree.—Self-Defence.*—For instructions on these subjects see opinion.

Same.—*Practice.—Argument of Counsel.*—In the course of his argument in a homicide case, the prosecuting attorney, referring to the defendant, said: "Will you believe this man, this person who has told so many lies, and who has just seen the shadow of the gallows!"

*Held,* not sufficient cause for reversal.

From the Allen Circuit Court.

*H. Colerick* and *W. S. Oppenheim,* for appellant.

*C. M. Dawson,* Prosecuting Attorney, for the State.

Elliott, J.—This case is here for the second time, *Boyle* v. *State,* 97 Ind. 322. One of the questions now argued by appellant's counsel was decided adversely to the appellant on the former appeal, and to that decision we adhere, not simply on the ground that it is the law of the case, but for the further reason that we believe the point was well decided. The question of which we are speaking, and of which we say that it was well decided on the former appeal, arises upon that part of the dying declarations of the deceased, wherein, in replying to the question: "What reason, if any, had the man for shooting you?" he said: "Not any that I know of, he said he would shoot my damned heart out." It was held that this was not the expression of an incompetent opinion, but was the statement of a fact, and we will not depart from that ruling. In the opinion given upon the former appeal, the following authorities were cited: *Wroe* v. *State,* 20 Ohio St. 460; *Rex* v. *Scaife,* 1 M. & R. 551; *Roberts* v. *State,* 5 Texas Ap. 141; Wharton Crim Ev., section 4.

The gravity and importance of the case, it is thought, justify us in referring to authorities that have come to our notice since the delivery of our former opinion, and in briefly discussing the question, although we do not deem it necessary to enter upon a very full discussion of the subject.

In *Payne* v. *State,* 61 Miss. 161, it was held that the statement of the deceased that the defendant shot him "without cause," was not the expression of an opinion.

The statement of the deceased in *People* v. *Abbott,* 4 W. C. Rep. 132, was, that "the man cut him with a knife, and that he had no cause for it whatever," and it was held to be the statement of a fact.

The statement of the dying person in *State* v. *Nettlebush,* 20 Iowa, 257, was in answer to a question whether the shot was accidental or intentional, and the answer was that "it was intentional." The evidence was held competent, but without any discussion.

In *Brotherton* v. *People,* 75 N. Y. 159, it was held that the statement, that "he, the deceased, did not at first recognize the defendant, but when the latter drew his pistol and commenced his pranks, he knew that it was the prisoner."

These authorities fully sustain our former ruling, and neither our own search nor that of counsel has resulted in finding any opposing decisions, except that of *Collins* v. *Commonwealth,* 12 Bush (Ky.), 271. That case disposes of the whole question in a single sentence, refers to one authority—1 Taylor Ev. 644—and that authority goes no further than to declare what is undoubtedly the general rule, that an opinion expressed in a dying declaration is not competent.

The decision in *People* v. *Fong Ah Sing,* 5 Crim. Law Mag. 64, is that it is improper to permit narratives of previous occurrences to be given in a dying declaration. What was there said by the court, and all that was said upon the subject, was: "Dying declarations are restricted to the act of killing and to the circumstances immediately attending it, and forming a part of the *res gestœ.* When they relate to former and distinct transactions, they do not come within the principle of necessity on which such declarations are received." It is evident, therefore, that the case cited is not in point, and this is true of the other cases declaring a similar doctrine, that are cited by counsel.

There is no substantial difference in the meaning of the word "cause" and the word "reason," as used in this instance in the dying declarations of the deceased. The jury

could not have misunderstood the import of the word as used in the question addressed to the deceased, nor could he, for it is quite clear that it asked and required him to state what cause there was for the killing. If it be held that a dying man may not declare in general terms that there was no reason or no cause for the act of his slayer, then it will be practically impossible to ever get before the jury a statement on that point, for it is not possible for any one, much less a dying man, to state all the circumstances and facts upon which the conclusion that there was no cause or reason for the killing is based. The truth is, that such a conclusion is not the expression of an opinion, but it is the statement of a conclusion of fact from observed facts, which, under all authorities, is competent in such a case as this. *Bennett* v. *Meehan*, 83 Ind. 566 (43 Am. R. 78); *Yost* v. *Conroy*, 92 Ind. 464, see p. 471 (47 Am. R. 156). The cases all agree that dying declarations are admissible in a case where the evidence would be competent if the declarant were on the witness stand, and if the statements of the deceased can, in any sense, be deemed the expression of an opinion, the opinion belongs to that class which the authorities agree a non-expert witness may express without stating the facts on which it is based. *Bennett* v. *Meehan*, *supra*, and authorities cited, p. 569; *People* v. *Hopt*, 9 Pacific Rep. 407. The cases upon this subject are very numerous, but most of them will be found in Lawson Expert and Opin. Ev. 468-534; Rogers Expert Test., pp. 6, 7, 8; Best Ev., section 505; Wharton Ev., section 512; and Stephens Ev., art. 26.

It was not asserted in our former decision that an opinion found in a dying declaration is competent in a case where it would not be so if expressed by a witness on the stand. On the contrary, the general rule that matters contained in a dying declaration are not competent unless they would be admissible if they came from the lips of a living witness, was declared and approved. *Montgomery* v. *State*, 80 Ind. 338 (41 Am. R. 815); *Binns* v. *State*, 46 Ind. 311.

What we decided in the former appeal and now reiterate is, that the evidence here objected to was competent because it would have been competent if it had come from a witness present in court.   We need not discuss the general rules governing the admission of dying declarations—they are rudimentary—for the question here is, not what the general rules are, but whether the declarant's statement was one that a witness on the stand would have been allowed to make.   The declarations of Casey do not refer, as did the statement in *Montgomery* v. *State, supra,* to the purpose with which an act was done by another, but they simply declare that there was no cause for that act.   A cause is often a fact, not merely an opinion, and it is here a fact.

The statement of the dying man was not an expression of an opinion as to the sufficiency of the cause or reason that the accused had for shooting, nor was it the expression of an opinion upon any subject, nor was it a narrative of a past occurrence, but it was the statement of a negative fact, namely, that there was no reason or cause whatever for the shooting. The declaration does not assume to be the expression of an opinion, but it professes to be, and in truth is, the statement of a fact, for, if there was no reason or cause whatever, no opinion could be given as to its sufficiency or insufficiency. Whether there is any cause for an act must be a fact, but if it be conceded that there is a cause, then, whether it was or was not adequate might well be deemed matter of opinion.

As we have suggested, negative facts can only be proved by a denial, since to enter upon a process of elimination and exclusion would lead to an almost endless examination.   If a negative fact like that here under discussion can not be proved by a general statement, then it would be necessary to enumerate every conceivable thing, and deny in detail that it existed:   A practical science, such as the law is, requires no such procedure as that; if it did, it would be practically impossible to establish a negative fact.   There are many instances in which what is in appearance a conclusion, but in reality a

fact, may be stated in evidence. We suppose that it can not be doubted that where the issue is whether a verbal agreement was entered into, it is competent to state in general terms that there was no agreement. So, in a case where the question is whether liquor was or was not sold, it is proper for the defendant to deny the sale. So, too, it is perfectly competent for a party to state that he relied upon the representations of another. There are many cases, far too numerous to justify mention, in which it is proper to make a general statement in denial.

There is an essential difference between a statement denying a thing and one admitting the existence of a thing and qualifying its character. Thus, to declare that liquor was sold, but not illegally, or that a man was struck, but not unlawfully, would, so far as the qualifying words are concerned, be a conclusion; if, however, those words should be struck out facts only would remain.

Whether the defence in a case of homicide is insanity, self-defence, or an *alibi*, can not change the rule governing the admission of dying declarations. There is not one rule for defences of insanity, another for self-defence, and still another for the defence of an *alibi*, but there is one rule for all cases. The question in all cases is to be determined irrespective of the nature of the defence. It can not affect the question in this instance, that the defence was that of self-defence. It would violate settled principles of logic and of law to hold that the accused might by the character of his defence change the rule as to the admissibility of dying declarations.

The name of the person who committed the homicide, as well as the name of his victim, may be proved by the dying declarations of the latter. *Sylvester* v. *State*, 71 Ala. 17; *State* v. *Johnson*, 76 Mo. 121; *Lister* v. *State*, 1 Texas App. 739.

A defendant in a criminal case, who elects to testify as a witness, is to be treated, so far as the cross-examination is concerned, as any other witness; this defendant did elect to testify as a witness, and hence is to be treated as any other

witness upon cross-examination. He put himself in the position of a witness, and as a witness he must be regarded. *Thomas* v. *State,* 103 Ind. 419; *Commonwealth* v. *Nichols,* 114 Mass. 285 (19 Am. R. 346) ; *State* v. *Ober,* 52 N. H. 459 (13 Am. R. 88) ; *Connors* v. *People,* 50 N. Y. 240.

The cross-examination of a witness must be confined to the subject opened by direct examination. This settled rule does not, however, restrict the cross-examination to the specific facts developed by the direct examination, but does confine it to the subject of that examination. Where a subject is opened by the direct examination, the cross-examining counsel may go fully into the details of the subject, and is not confined to the particular part of it embraced within the questions asked upon the direct examination. A subject can not be so partitioned by a direct examination as to cut down the cross-examination to the specific matters developed by the questions of the counsel who conducts the examination in chief, for, once a subject is entered upon, it is opened to a full and detailed investigation on cross-examination. *Bessette* v. *State,* 101 Ind. 85; *Wachstetter* v. *State,* 99 Ind. 290 (50 Am. R. 94); *Hyland* v. *Milner,* 99 Ind. 308; *DeHaven* v. *DeHaven,* 77 Ind. 236, see p. 239.

In this instance, the accused, when on the witness stand, had given an account of his movements upon a day named, and it was proper to go fully into the subject upon cross-examination, and the State was not confined to the particular period of time designated in the questions asked on direct examination.

We agree with the counsel for the appellant, that where the accused goes to the jury upon the theory that he acted in self-defence, it is error to set up as the standard by which to determine whether he, in good faith, believed himself to be in danger, an ideal or imaginary man. *Batten* v. *State,* 80 Ind. 394. While we agree with counsel in their view of the legal proposition, we can not adopt the construction which they place upon the instruction, for, in our judgment, it will not

bear that construction. The instruction does not, as counsel assume, set up an ideal man as the standard by which the jury must measure the conduct of the accused, for it directs their attention to real men and things.

The twentieth instruction given by the court reads thus: "Malice may be proved by direct evidence, such as prior threats, or seeking an opportunity to perpetrate the act. This is called express malice, and proof of such malice in this case would be evidence of premeditation, and would make the case murder in the first degree, if otherwise made out beyond a reasonable doubt. Malice may also be implied from the act of killing; as if the killing is done purposely and without justification, legal excuse or reasonable provocation. And if the act is perpetrated with a deadly weapon so used as to be likely to produce death, the purpose to kill may be inferred from the act."

The counsel for appellant treat this instruction as if it stood alone, and in doing so violate the elementary principles of logic as well as the settled principles of law. We have again and again decided that instructions are not to be disposed of by a process of dissection, but are to be taken as a whole. It would be unreasonable to expect that one instruction should cover an entire case, or that the jury should take the law from one of a series of instructions. Where an instruction stands alone upon one material point, neither explained nor qualified by any others, then it might with reason be affirmed that if it erroneously expressed the law there should be a reversal, but where it forms one of a series bearing upon a given question, and, taking the entire series together, the law is correctly stated to the jury, it is otherwise. *Indiana, etc., R. W. Co.* v. *Cook*, 102 Ind. 133; *Hodges* v. *Bales*, 102 Ind. 494; *Walker* v. *State*, 102 Ind. 502; *Story* v. *State*, 99 Ind. 413; *Koerner* v. *State*, 98 Ind. 7; *Goodwin* v. *State*, 96 Ind. 550; *McDermott* v. *State*, 89 Ind. 187; *Achey* v. *State*, 64 Ind. 56; *Binns* v. *State*, 66 Ind. 428.

Taking the instructions together, as we must do, they so

fairly gave the law to the jury that the appellant has no just reason to complain.    But, if the instruction stood alone, we do not believe that there is any error in it that would warrant a reversal, although it may, perhaps, be subject to verbal criticism.    The express malice of which the instruction speaks is that evidenced by threats and the efforts to secure opportunities to slay the deceased, and it is certainly not error to charge the jury that the uttering of threats and the effort to secure an opportunity to kill the deceased may be regarded as evidence of premeditation.    The only point wherein the instruction is justly subject to criticism is in that it tells the jury that such express malice " would make the case murder in the first degree, if otherwise made out, beyond a reasonable doubt;" but, considered in connection with the other parts of the instruction, it is clear that the statement quoted could not have misled the jury.    The meaning conveyed is, that, if all the other elements of murder in the first degree were proved beyond a reasonable doubt, then proof of previous threats and efforts to kill would make out a case of murder in the first degree.    This is correct as an abstract proposition of law, for if all the other ingredients of the crime were proved, as purpose, malice, and the like, then premeditation would be established by such express malice as the court referred to, namely, previous threats and efforts to secure an opportunity to kill.    As the court had told the jury what were the essential ingredients in the crime of murder in the first degree, and had defined premeditation, the jury must have understood that the case was not " otherwise made out," unless premeditation, as defined by the court, was proved beyond a reasonable doubt, since premeditation, as they were expressly charged, was essential to the existence of the crime of murder in the first degree.

The twenty-seventh instruction is as follows:   " In this case as in all other criminal cases, the law provides that the defendant is a competent witness in his own behalf, and that his testimony is to be received and weighed by the jury as in the

case of the testimony of any other witness, and if in this case the defendant has elected to testify in his own behalf, and, in so doing, he has testified to the commission of any other or different crime from the one here charged in the indictment, you will not, nor have you the right to, consider such testimony for the purpose of punishing him for the crime here charged, nor must you talk about it in your jury room for that purpose, but must wholly free your minds from any such thing, and not permit it to prejudice you, or bias your judgment against the cause of the defendant. But you may consider such evidence, if any there be in this case, in determining what credibility should be given to the defendant's testimony in this case." The defendant, at all events, has no just cause to complain of this instruction. In his testimony he confessed that he had committed the crime of burglary, and that was a circumstance affecting his credibility. The testimony of a confessed burglar is not so free from suspicion as that of men guiltless of crime. It has been the law in this State since 1852, that the conviction of an infamous crime may be proved against the credibility of a witness, and for hundreds of years it was the rule of the common law that the conviction of an infamous crime rendered a person incompetent to testify. The question is not, as it was in *Farley* v. *State*, 57 Ind. 331, what method of proving a conviction may be adopted, but the question is, what is the effect of the defendant's voluntary admission that he had committed a crime? The question in *Fletcher* v. *State*, 49 Ind. 124 (19 Am. R. 673), was not as to the effect of the admissions of a defendant that he had committed an infamous crime upon his credibility as a witness, but the question there was as to how far those admissions could be considered as tending to prove the crime for which he was on trial. It is evident, therefore, that neither of those cases is in point here.

We do not think that the thirty-first instruction given by the court is subject to the objections urged against it. If a

man without provocation shoots another, and the shooting is not done in self-defence, and is accompanied by threats, it may, at least, be deemed murder in the second degree, and it is of such a killing that the instruction speaks. At all events the defendant has no just reason to complain of the instruction, for, if there is error in it, the error is to the prejudice of the State, and not of the defendant. *Murphy* v. *State*, 31 Ind. 511; *State* v. *Johnson*, 102 Ind. 247; 2 Bishop Crim. Law, section 680.

The language used in the instruction implies that the killing must have been purposely done, for it can not be reasonably supposed that a killing, "accompanied by threats," was accidentally done, and it was to such a killing that the minds of the jury were directed by the court. But, if this were not so, still, the instruction as applied to the evidence was correct, as there was no pretence that the shooting was accidental. The testimony of the defendant was that it was purposely done, but done in self-defence, so that there was no reason for the court to speak of an accidental shooting. Again, the instruction is to be considered in connection with those previously given, and they very clearly informed the jury that to constitute murder in the second degree the shooting must have been purposely and maliciously done. It is impossible, therefore, that the jury could have been misled, and unless it appears that they might have been misled to the prejudice of the accused, there can be no reversal. *Epps* v. *State*, 102 Ind. 539. The instruction does not, as did the instructions in *Brooks* v. *State*, 90 Ind. 428, and *Norton* v. *State*, 98 Ind. 347, attempt to state all the facts hypothetically, but states the general rule upon the subject of self-defence and adds, that, " If the defendant was in no danger of his life or of great bodily harm from the deceased at the time of the alleged killing, named in the indictment, and if from the situation, position and condition of the deceased, at that time, defendant had no reasonable grounds to believe and did not believe that he was in urgent and imminent danger of losing

his life or suffering some great bodily harm at the hands of the deceased, and under the circumstances he shot and killed the deceased with a deadly weapon, at the time and place laid in the indictment (if you find these things hereinbefore set forth beyond a reasonable doubt), then and in that case the law will imply that such killing sprung rather from a bad and malignant heart, and if done without provocation, accompanied by threats, the law will imply that it was purposely and maliciously done."

The whole instruction proceeds upon the theory that the killing must have been done purposely, and the jury could not have understood it differently. This we say, because it lays down the law of self-defence, and this, of course, implies that the killing was not accidental, but was intentional. Taken as a whole, the instruction, although somewhat confused and obscure, can not be understood as speaking of anything else than an intentional shooting.

If there was no provocation for the shooting, and if it was, as the instruction hypothetically assumes, accompanied by threats, then the law will infer the existence of malice. In *State* v. *Johnson, supra,* it was said : " If an act is unlawful, and is of such a character as that the known or probable consequences of it would naturally be to produce serious bodily harm or endanger the life of the person against whom it was directed, the law would infer malice, and the crime would or might be murder."

The court did not err in directing the jury that mere words do not constitute such a provocation as will reduce an unlawful killing from murder to manslaughter. *Murphy* v. *State, supra ;* 2 Bishop Crim. L., sections 700, 704.

The prosecuting attorney, in the course of his argument, said : " Will you believe this man, this person, who has told so many lies, and who has just seen the shadow of the gallows ! " In so far as the statement of the prosecuting attorney criticises the testimony of the accused, it was proper, for he had testified as a witness, and had been contradicted upon many

material points. An accused who voluntarily goes upon the witness stand is subject to the same criticism as any other witness, and it is not improper to assail in argument his credibility when he has been contradicted. *Thomas* v. *State*, 103 Ind. 419. All that can be said to be improper in the statement of the prosecuting attorney is the words " who has just seen the shadow of the gallows," and this we can not regard as a sufficient cause for reversal. It is a general, indefinite statement, and is not a comment upon a former verdict, for it does not in terms refer to any verdict, and it is, therefore, essentially different from a deliberate and direct comment upon a verdict rendered on a former trial. It is only where the misconduct in argument is of such a material character as makes it probable that it misled the jury, to the prejudice of the accused, that we can reverse. *Epps* v. *State, supra; Anderson* v. *State*, 104 Ind. 467; *Shular* v. *State, ante*, p. 289, and authorities cited ; *People* v. *Hopt*, 9 Pacific Rep. 407.

It would be doing great injustice to the fairness and intelligence of the jury to assume that they were misled by such a general and fugitive remark as that of the prosecuting attorney in this instance.

We have given the evidence a careful examination, and find that it sustains the verdict upon every material point.

Judgment affirmed.

Filed March 4, 1886.

### DISSENTING OPINION.

ZOLLARS, J.—The principal opinion holds that the dying declaration of Casey, that appellant had " no reason for the shooting," is competent evidence to go to the jury. To this holding I can not yield my assent.

I stated the grounds of my dissent at some length upon the former appeal. *Boyle* v. *State*, 97 Ind. 329. The gravity of the question, and the fact that it has been re-argued in the principal opinion, seem to render it proper that I should here state the grounds of my non-concurrence.

On the 16th day of March, Casey identified appellant as the person who shot him. On the next day, in the absence of appellant, his dying declarations were taken. A part of those declarations, which was allowed to go to the jury over appellant's objection and exception, and which the principal opinion holds competent, is as follows:

"Question. What reason, if any, had the man you have so identified, for shooting you? Ans. Not any that I know of; he said he would shoot my damned heart out."

There are certain admitted facts in this case, and certain cardinal principles of the law, that should be kept steadily in view in this discussion.

The declarations in this case were taken in the absence of appellant, and hence he had no opportunity for a cross-examination. The most important agency in the elicitation of the truth in the trial of an issue is the cross-examination. A cross-examination may develop the truth, by refreshing the memory of an honest witness. It may show that the witness has used the wrong word to convey his meaning. It may show that what the witness states as a fact is but the expression of an inference or an opinion. It may show that the witness has suppressed facts, and told but a part of the truth. It may show that the witness is interested, prejudiced, biased and vindictive. The expectation of a cross-examination, doubtless, deters many dishonest witnesses, and keeps them nearer the truth. So important is the right to cross-examine adverse witnesses, that if the trial court should refuse it directly, or indirectly, by proceeding in the trial of a criminal charge in the absence of the accused, this court would unhesitatingly reverse a judgment of conviction.

That the accused shall have the opportunity to be confronted with his accusers, and cross-examine the witnesses against him, was thought to be of so much importance that the Fathers incorporated into the Constitution of the United States the provision that in all criminal prosecutions the ac-

cused shall enjoy the right to be confronted with the witnesses against him.

It is also provided in the Constitution of this State, that in all criminal prosecutions the accused shall have the right to meet the witnesses face to face.   R. S. 1881, sections 30, 58.

Nearly all, if not all, the State constitutions contain a like provision.   And although we are far removed from the period when, in England, persons were falsely accused, tried without a jury, and without an opportunity to meet their accusers and the witnesses against them, yet, so jealous of the rights and liberties of the citizen have the people remained, that when the territories come, seeking admission into the Union as States, they come with constitutions declaring that the accused, in criminal prosecutions, shall have the opportunity to meet face to face the witnesses against them.   Dying declarations constitute the only exception to the rule, that in all cases the accused shall have the opportunity to meet face to face, and to cross-examine adverse witnesses.   Such declarations are admitted upon the single ground of necessity.   The necessity rests primarily and principally upon the presumption, that in a majority of cases, there will be no equally satisfactory proof of the same fact.   This presumption, and the probability of the crime going unpunished, are the chief grounds of this exception in the law of evidence. And although it is not now essential to the admissibility of such evidence that there should be no other proof of the same fact, yet, that there is such proof, as in this case, where there was an eye witness of the shooting, is a fact that should not be lost sight of, and surely should be a reason for keeping within proper limits the rule which admits dying declarations.   It has been well said by a learned judge, that the great reason why dying declarations should not be received generally, as evidence, in all cases where the facts involved may thereafter come in question, seems to be, that it wants one of the most important and indispensable elements of testimony, that of an opportunity for cross-examination by the

party against whom it is offered. 1 Greenl. Ev., section 156, note a; see, also, *Nelms* v. *State*, 13 Sm. & M. (Miss.) 500.

In the case of *Leiber* v. *Commonwealth*, 9 Bush (Ky.), 11, it was said: "The admission of dying declarations as evidence being in derogation of the general rule which subjects the testimony of witnesses as ordinarily received to the two important 'tests of truth,' an oath and a cross-examination, it is obvious that such evidence should be admitted only upon the grounds of necessity and public policy, and should be restricted to the act of killing, and the circumstances immediately attending it and forming a part of the *res gestæ*."

In the case of *Montgomery* v. *State*, 80 Ind. 338, this court quoted with approval the following from Mr. Starkey: "But so jealous is the law of any deviation from the general rule, that it confines the exception to the necessity of the case, and only renders such declarations admissible when they relate to the cause of death, and are tendered on a criminal charge respecting it." Because such evidence is an anomaly in the law, comes without the sifting of a cross-examination, and is liable to work injustice and injury to the accused, it has always been held that it must be zealously guarded and cautiously received. It is not under oath, but has been admitted upon the theory that the declarant making the statements, in the expectation of death, will be likely to tell the truth. Such evidence, doubtless, has a most potent influence with juries, because of the solemnity of the occasion under which it is rendered, and yet the truth is, that in many, if not in most cases, it is the weakest kind of evidence when looked at aside from mere sentiment.

The dying man is not allowed to make his statements until those about him think that he is near the end, and he sees, or thinks he sees, the shadows of death settling about him. Under such circumstances, and at such a moment, if he is a believer in personal responsibility and a future state, the mind will be centered upon and more concerned about that near future than about the things that are receding from view.

And hence statements made under such circumstances, as to how the injury was received, etc., come with that infirmity that always attends inattention. Especially will this be so if those statements embody what must have been the result of a process of reasoning, as an inference, conclusion or opinion. It often happens, too, that in such an extremity the mind is not in its full vigor. The memory may have been confused and the reason blunted from physical suffering or mental anxiety. In such a condition the mind yields ready assent to what may be suggested, and the person states as a fact what is in truth a conclusion or an opinion, which would clearly appear to be erroneous, were the facts stated upon which they are based. And if facts are stated, it may be that but a part are stated, the most important being omitted. It has happened that a dying declaration made one day is contradicted by a different statement upon a subsequent day. *Moore* v. *State*, 12 Ala. 764.

Persons fatally wounded in a personal collision rarely ever think that they were in the wrong, although in fact they may have been, and hence they go to their death believing and declaring that they were assaulted and injured without any reason. However depraved a person may be, there is yet an unwillingness to be thought to have been in the wrong, and hence there is an inclination to so warp and color statements that surviving friends, at least, shall believe in the innocence of the dead.

It is a fact, too, that the expectation of death does not always make a good man of a bad one, nor a truthful man of a reckless one. Many have gone to their death with vengeance in their hearts and curses upon their lips.

The cases are many, where guilty murderers have stood upon the gallows, and with their dying breath asseverated their innocence. Generally, persons injured in personal collisions are not of the most blameless character. As a rule, doubtless they are the reverse. Not unfrequently they are persons who have no regard for others' rights, and regard not the

law, except as they fear it. When the fear of prosecution for perjury is removed, they have no incentive for truth, even in the face of death.

Mr. Roscoe says : " Such considerations show the necessity of caution in receiving impressions from accounts given by persons in a dying state; especially when it is considered, that they can not be subjected to the power of cross-examination; a power quite as necessary for securing the truth as the religious obligation of an oath can be. The security, also, which courts of justice have in ordinary cases for enforcing truth, by the terror of punishment and the penalties of perjury, can not exist in this case." Roscoe Crim. Ev., p. 35.

Mr. Greenleaf says : " Yet it is always to be recollected that the accused has not the *power of cross-examination*,—a power quite as essential to the eliciting of all the truth, as the obligation of an oath can be; and that where the witness has not a deep and strong sense of accountability to his maker, and an enlightened conscience, the passion of anger and feelings of revenge may, as they have not unfrequently been found to do, affect the truth and accuracy of his statements, especially as the salutary and restraining fear of punishment for perjury is in such cases withdrawn." 1 Greenl. Ev., section 162. See, also, 1 Phillipps Ev., annotated by Cowen & Hill, 300; *People* v. *Sanchez*, 24 Cal. 17.

Indeed, law-writers and judges universally place the admission of dying declarations upon the ground of necessity, and strongly enjoin the duty of carefully limiting and cautiously receiving such evidence. Such has been the settled rule and practice of this court. *Morgan* v. *State*, 31 Ind. 193; *Binns* v. *State*, 46 Ind. 311; *Montgomery* v. *State, supra.*

Another rule of the law is, that no question to or answer by the dying man is competent, unless such question might be propounded to, and such answer might be made by, a witness upon the stand.

Another rule of law closely related to the above is, that such declarations must be of facts, and not of opinions, be-

lief, conclusions, or inferences from facts. *Binns* v. *State,* *supra;* *Montgomery* v. *State, supra;* 1 Greenl. Ev., section 159; Roscoe Crim. Ev. 32; Wharton Hom., section 765, and cases there cited; Wharton Crim. Ev., sec. 294, and cases there cited; *Warren* v. *State,* 35 Am. R. 745; 1 Taylor Law of Ev., p. 644.

These rules too should be strictly guarded and enforced. If there is to be any laxity either way, it would seem that more latitude should be allowed in the examination of the witness upon the stand, because, there, the accused has an opportunity by cross-examination to sift and separate the facts from conclusions, and to thus show that what is stated as a fact is but a conclusion, inference or opinion, without sufficient facts upon which to rest.

In the case of *Shaw* v. *People,* 3 Hun (N. Y.) 272, it was said: "It is even more important to exclude an opinion, declared *in articulo mortis,* than in an ordinary case, where the witness may be subjected to a cross-examination," etc.

I have said this much in order to show how important and necessary it is to exercise great caution in the admission of dying declarations in evidence against the accused, who has no opportunity for a cross-examination.

In the case before us, it appears from the evidence that appellant and Casey, a short time before the shooting, had been engaged in a robbery in Ohio. This is the only information we have as to their character, except that appellant testified that Casey told him of his reckless, desperate and wicked life. Certain it is, that there is nothing in the evidence to inspire much confidence in the honesty and truthfulness of Casey, even though he spoke with the expectation of death. I submit, therefore, that this calls for additional caution in receiving his statements in evidence.

It may be too, that appellant is just where he ought to be, but that is not all there is of the question before us. The rule that we here establish is to be the rule that shall apply

in all cases, no matter how wicked and depraved the slain, nor how upright may be the accused.

It must be kept steadily and prominently in view that appellant admits the shooting, and defends upon the sole ground that he had a " reason " or " cause " for so doing. In other words, his defence is that the shooting was justifiable because done in self-defence. If he had a reason or cause that would render the shooting justifiable, he is not guilty of murder. If he had no real reason or cause, and had not reasonable ground to apprehend death or great bodily harm at the hands of Casey, he is guilty of murder. Whether or not appellant had such " reason " or " cause " as would render the shooting justifiable, was the one important and only question to be settled by the trial. That was the issue. There was none other. Upon that issue, and in negation, the dying declaration of Casey was admitted in evidence. That declaration was that appellant had no " reason " for the shooting that he, Casey, knew of. It is held in the principal opinion that this declaration is not the statement of a conclusion, nor of an opinion, but of a fact such as any witness may state from the witness stand over the objection of the accused. In support of this holding the following authorities are cited: *Wroe* v. *State*, 20 Ohio St. 460; *Roberts* v. *State*, 5 Texas App. 141; *Payne* v. *State*, 61 Miss. 161; *Rex* v. *Scaife*, 1 Moody & Rob. 551; *People* v. *Abbott*, 4 West Coast Rep. 132; *State* v. *Nettlebush*, 20 Iowa, 257; *Brotherton* v. *People*, 75 N. Y. 159; Whart. Crim. Ev., section 294.

The Ohio case, *supra*, upon which rest the Texas and Mississippi cases, is radically different from the case before us. Here, as I have said, the defence is self-defence, and hence the vital question, and the only question for trial, was, had appellant a " cause " or " reason " for the shooting? No such question was involved in the Ohio case. There the accused did not admit the shooting, and claim that he had a reason or cause for so doing. He denied the shooting. No one saw him do the shooting. Thus denying the shooting, he was not

in a favorable position to complain of the dying declarations that in no way connected him with the crime. If, as he claimed, he did not do the shooting, of course there could be no question of self-defence, and no question, so far as he was concerned, as to whether or not there was a reason or cause for the shooting. The dying declarations admitted in evidence were, that he, the dying man, did not know who did the shooting; that "it was done without provocation on his part * * * ; that he had done nothing to provoke it." The accused was claiming nothing to the contrary, and hence the evidence was harmless as to him, and of no practical importance in the case. The summary way in which the question was disposed of by the court indicates that the evidence was not regarded as being of much importance in the case. The following is the whole of the discussion by the court: "The declaration of the deceased, in speaking of the fatal wound, that 'it was done without any provocation on his part,' is objected to as being mere matter of opinion. Whether there was provocation or not, is a fact not stated, it is true, in the most elementary form of which it is susceptible, but sufficiently so to be admissible as evidence. In *Rex* v. *Scaife,* the declaration of the deceased was: 'I don't think he would have struck me if I had not provoked him.' This was received to prove the fact of provocation on the part of the deceased. 1 Moody & Rob. 551."

It should be observed, too, that the declaration in the Ohio case, that the shooting was done without provocation on the part of the deceased, was accompanied with the statement that he had done nothing; so that, taking the statements together, they are somewhat in the nature of a conclusion, accompanied with the facts upon which the conclusion is based. If the question of "provocation" had been the one vital question in the case, then I say, without hesitation, that it would not have been competent for the dying man to dispose of the whole case by stating that there was no provocation. I shall endeavor hereafter to state my reasons for so saying.

In the case of *Rex* v. *Scaife*, 1 M. & R. 551, relied upon by the Ohio court, the declaration was: "I don't think he would have struck me if I had not provoked him." COLE-RIDGE, J., hesitated, but finally admitted the declaration upon the ground that it might have an influence on the amount of punishment. There was no discussion at all as to whether or not the declaration involved a conclusion. It will be observed that the declaration did not involve the one and vital question in the case, and that it was in favor of, and not against, the prisoner. The prisoner was not endangered by the want of an opportunity to cross-examine the dying witness, because the declaration was in his favor. In speaking of this declaration, the Kentucky Court of Appeals, in the case of *Haney* v. *Commonwealth,* 5 Crim. L. Mag. 47, said, that it was the expression of an opinion, but was admissible because in favor of the accused. The Ohio court cites it as being the statement of a fact. It was held in the Kentucky case above, as stated in the syllabus, that "The general rule that declarations of the deceased are admissible only when they relate to facts and not to mere matters of opinion, is subject to the exception that declarations of the mere opinion of deceased are admissible where they are favorable to the accused, and explain the conduct or motives of deceased." In speaking of such declarations in favor of the accused, the court said, amongst other things, "The admission of such declarations can do no harm. Frauds can not be practiced under cover of the rule. And there is not so much danger of misconception or perjury as where the declarant speaks from hostile feelings, surrounded by sympathizing friends, ready to construe his words as favorable to their own views, as may reasonably be done."

In the Texas case, there was no question before the court, because the declarations were admitted without any objection. It was so stated by the court, and it was held that, for that reason, the judgment could not be reversed because of their admission in evidence. It should be observed too, that

while the declarations by the dying man contained a statement that the accused killed him for nothing, he also stated, apparently, all of the facts upon which the general statement was based. It will appear hereafter, that this makes a very material difference between that case and this, and a very material difference in the application of the rule admitting dying declarations. After stating the rule that declarations *in articulo mortis* must be of facts, and not matter of opinion, the court cited the Ohio case as having held that the statement that the wound was inflicted without provocation, was competent. This is the extent of the indorsement of the Ohio case.

In the Mississippi case the declaration was that the accused did the shooting without cause. The following is the whole of the discussion by the court: "Such declarations are admissible only as to the circumstances of the killing and are restricted to a statement of facts, and opinions and inferences are to be excluded, but the dying declaration admitted in this case was of a fact and not an opinion or inference of the declarant. It was that the defendant shot him without cause. It was not error to admit this declaration. *Wroe* v. *State,* 20 Ohio St. 460."

This case rests wholly upon the Ohio case, and without any discussion whatever really goes beyond that case. I shall speak of this case hereafter.

In the case of *People* v. *Abbott, supra,* the dying man recognized the accused as the man who cut him with a knife, and stated that "he had no cause for it whatever." The court considered the question as to whether or not the declaration was made *in articulo mortis,* but there was no decision, nor was there any discussion by court or counsel as to whether or not the declaration was a statement of a fact, or a conclusion or opinion. Indeed, there was no occasion for discussion or decision upon that question, because the declarations were made in the *presence* of the accused, who neither denied them nor propounded a question. The declarations thus became

competent evidence against the accused as *quasi* admissions upon his part.

In the Iowa case, the declaration was that the shooting by the accused was intentional. It is not made certain, but there is room for a strong inference that the declaration was made in the presence of the accused. However that may be, the declaration was admitted without objection, and there was no decision, discussion or statement by the court as to whether or not the declaration was the statement of a fact or a conclusion or opinion. In the opening of the opinion it is stated by the court that the only question for decision was as to whether or not the evidence in the case was sufficient to sustain the verdict. If the declaration had been held competent, it would have brought the case in collision with the cases holding that the state of feeling between the parties can not be stated in a dying declaration. *Reynolds* v. *State*, 68 Ala. 502. A witness would not be allowed to state from the stand that the shooting was intentional, any more than he would be allowed to state the purpose of an act. *Montgomery* v. *State*, 80 Ind. 338.

There is nothing in the New York case except the declaration of the dying man, identifying the accused as the man who shot him. It will appear further along that such evidence, although the expression of an opinion, is competent, from the necessity of the case, it being impossible for the witness to put in language the grounds and means of such knowledge. That, however, is not at all the case before us.

In section 294, Wharton Crim. Ev., cited, the rule is stated broadly, that dying declarations must be of facts, and not of opinion or belief, and in referring to the Ohio and Texas cases it is stated, " it has been held," etc.

It must be apparent from this examination of the authorities relied upon in the principal opinion, that the only one directly in point is the Mississippi case, which rests upon the Ohio case ; that, to some extent, supports the principal opinion. As has been seen, the Kentucky Court of Appeals, in the case

of *Haney* v. *Commonwealth, supra,* has taken the prop from under the Ohio case, by holding that the declaration in the case of *Rex* v. *Scaife, supra,* was the statement of an opinion, and not the statement of a fact.

The Ohio case, and those based upon it, are squarely met by the case of *Collins* v. *Commonwealth,* 12 Bush (Ky.), 271. The dying declarations in that case were, "that Michael Collins killed me, and killed me for nothing." The court, LIND-SAY, C. J., delivering the opinion, after holding that dying declarations are admitted on the ground of necessity, said: "In this case it was unnecessary to prove the declarations of the deceased to establish the fact that the killing was done by the accused. That fact was abundantly proved by several uncontradicted witnesses, and was virtually admitted by the line of defence adopted. The statement that Collins killed the deceased 'for nothing' was but the expression of an opinion, and was clearly inadmissible."

In the case of *McPherson* v. *State,* 22 Ga. 478, the dying declaration was, that the declarant did not believe that the accused intended to hurt him. This was held not competent, even in favor of the prisoner, because not the statement of a fact.

In the case of *People* v. *Wasson,* 3 W. C. Rep. 642, the dying declaration was, "I think that this man, Henry Wasson (the defendant), is the man that shot me." This was held to be the expression of an opinion, and hence not admissible.

Many similar cases might be cited, not all of which are directly in point, upon the specific declaration under discussion, but all laying down the general rule, which is, as I contend, in conflict with the Ohio and Mississippi cases. These cases, it seems to me, if regarded as adjudications, are illogical, and opposed to reason and the weight of authority. They involve a *petitio principii.* Without argument, the very point in dispute is at once assumed by holding that the declaration is the statement of a fact. Whether appellant had a "reason" or "cause" for the shooting is, in some sense, a

fact, but it is not a fact that a witness may state. It is the ultimate fact to be found from all the facts and circumstances attending the killing. If a fact, in any sense, it is the ultimate fact, which, in this case, settles the guilt or innocence of appellant. If a fact at all, it is an inferential fact, depending upon other and primary facts. No person, not present, could say that there was no "reason" or "cause" for the shooting. Why? Because he would have no knowledge of the facts and circumstances attending the shooting. A knowledge of these facts is absolutely essential to such a statement. How then is such a conclusion and statement to be arrived at? Clearly, the witness must take the facts and circumstances, weigh them, reason about them, and by this process arrive at a conclusion. The conclusion that there was no "reason" or "cause," is the result of mental process, and can be arrived at in no other way. It can not be settled by the physical senses. It can neither be seen, heard, nor felt, but must be the result of reasoning from other facts. If so, clearly the result of such mental process is not, in the common and legal sense, a fact. It is a conclusion based upon facts. A fact, primarily, is an "act, an incident, a circumstance." Worcester's Dictionary. The latin word is *factum*, from *facere*, to make, to do. Webster defines a fact as "an act, event," and gives as synonyms "act, deed, performance, event, incident, occurrence, circumstance." Bouvier defines a fact as "an action, a thing done, a circumstance."

Whether or not upon the facts and circumstances attending the shooting, the conclusion shall be reached that appellant had, or had not, a "reason" or "cause" for the shooting, will depend upon the moral sense, the reasoning faculties, and the preconceived notions of the witness upon the question of self-defence. All persons do not reason alike, and do not come to the same conclusion from the same given facts. Upon the facts and circumstances of the case, one may conclude that appellant had ample reason for the shooting in the manner

Boyle *v.* The State.

and at the time he did. Upon the same facts and circumstances, another may conclude that he had no reason at all.

This is amply illustrated by the numerous cases where dying men have made declarations, and at the same time given such facts as to show that the declarations were inferences, conclusions and opinions. And these cases show, too, how very dangerous it is to admit such declarations when they embody anything more than primary facts; and how hazardous it is to hold as the statement of facts declarations which may be but the result of inferences and conclusions from facts not stated.

In the case of *Binns* v. *State*, 46 Ind. 311, the dying declaration by the woman was that it was her husband, the defendant, who shot her. If she had stopped with that, the declaration, perhaps, would have been called the statement of a fact, would have gone to the jury, and, probably, procured a conviction. It was further developed by her statements, however, that she was shot through a window; that she did not see the person who shot her, but based her statement upon the fact that the husband had threatened to shoot her through the window. These latter statements showed that the declaration was but the statement of an opinion, and hence was held by this court to be incompetent.

So, in the case of *Warren* v. *State*, 9 Tex. App. 619 (35 Am. R. 745), the dying man said : " I know Geo. Warren shot me." If he had stopped there, it might, perhaps, be said that he but stated a fact; but he added, " for he threatened me." This showed that the former part of the declaration was but an opinion, and hence incompetent.

So, in the case of *Shaw* v. *People*, 3 Hun (N. Y.) 272, already cited (S. C., *People* v. *Shaw*, 63 N. Y. 36), the woman who was dying from the effects of poison, said : " Charles " (her husband) " and the Briggs woman was the *cause* of all this suffering, the cause of all this." Here was an unqualified, emphatic statement. In a subsequent statement to an-

other person she said that she "*expected* it was Charles and Mrs. Briggs."

Many such cases might be cited, and, as I have said, they all show the necessity of requiring the primary facts.

In the case before us, there were facts and circumstances connected with the shooting, and these Casey must have had in mind when he declared that there was no "reason" or "cause," or else he stated his opinion without any reference at all to the facts and circumstances which must be known before any one could say that there was no "reason" or "cause" for the shooting. As I have said, the one vital question in the case was, had appellant a reason or cause for the shooting? That was the ultimate fact to be settled. How shall it be settled? Shall the whole question be disposed of by the dying declaration, or shall the jury, who are the triers of the facts, determine as to whether or not there was a "reason" or "cause"? How shall the jury get at the facts? Shall they perform the mental process, make the inference, and form their opinion from the facts and circumstances attending the shooting, or shall that be done for them by the witnesses—in this case by the dying man? Shall he give to the jury the facts and circumstances, or shall he keep them to himself, and give to them the ultimate fact that he has inferred from the facts and circumstances, his opinion upon those facts and circumstances? Could the jury have the facts and circumstances, they might readily disagree with him as to the existence of a "reason" or "cause" for the shooting. Had he stated the facts and circumstances, it might readily have appeared to the court that the declaration was but an opinion without sufficient facts upon which to rest.

It is stated in the principal opinion that such a conclusion (the declaration) "is not the expression of an opinion, but is the statement of a conclusion of fact, from observed facts, which, under all the authorities, is competent." I can not concur in this, either as a general proposition of law or as applied to this case.

My understanding of the law is, that in no case is it competent for a witness to state an inference or conclusion from facts, where it is possible to give the facts to the jury. A non-expert witness may, in some cases, express an inference or opinion, but the uniform holding of this court has been, and I understand it to be the rule everywhere, that he can not express an opinion until he has first, so far as it is possible, stated the facts upon which the opinion is based. That a non-expert witness may give an opinion at all, is the rule of necessity, and outside of the general rule. When the case is one in which all the facts can be presented to the jury, then no opinion can be given, because the jury are as well qualified as the witness to form a conclusion.

In the case of *Evansville, etc., R. R. Co.* v. *Fitzpatrick*, 10 Ind. 120, it was said: "As a general rule, witnesses are only permitted to state facts, such as are within their own personal knowledge. Opinions, beliefs and *deductions*, must be confined to the tribunal whose duty it is to decide upon questions of fact."

In the case of *Loshbaugh* v. *Birdsell*, 90 Ind. 466, it was held that a witness can not give his opinion that a highway will or will not be of public utility. It was said: "There was no difficulty in putting the jury in possession of all the facts pertinent to this inquiry, and they are supposed to be as well qualified to form an opinion from the facts as the witnesses themselves. * * * The admission of these opinions also seems to trench upon the rule that witnesses can not usurp the province of the jury, which they would do were they allowed to express opinions upon the very issue upon trial."

In the case of *Yost* v. *Conroy*, 92 Ind. 464, it was held that the opinion of a witness as to the public utility of a ditch, and the amount of damages it may cause to lands, is not proper evidence. It was said: "To hold otherwise would put the witnesses in the place of the jurors, and commit to

them the decision of the amount of recovery. A contrary doctrine would also violate the rule that witnesses can not express an opinion upon the precise point which the issues present for the decision of the jury."

There are cases where the witness can not put before the jury, in an intelligible and comprehensible form, the whole ground of his judgment or opinion. In such cases, after the witness has stated all the facts that it is possible to state, he may, from the necessity of the case, give an opinion.

When questions as to the condition of the mind and body are the questions in issue, there are often many things in the acts, deportment and appearance of the party which create a fixed and reliable judgment in the mind of the observer, that can not be conveyed in words to the jury. That a person appears to be sick, sad or intoxicated, may well be known by observation, and yet there is no way to describe the appearance except by the words that necessarily embody the conclusion reached by observation. And so, a witness may know a person, and yet he can not convey to the jury in words how he knows him. In such cases, the rule of necessity allows the witness to give an opinion, for it is nothing but an opinion as to the identity of the person. *Carthage T. P. Co.* v. *Andrews*, 102 Ind. 138 (142). This is the doctrine laid down in the cases of *Yost* v. *Conroy, supra,* and *Bennett* v. *Meehan,* 83 Ind. 566, cited in the principal opinion.

In the case of *State* v. *Williams,* 67 N. C. 12, after holding that statements of personal identity are opinions, admitted from necessity, that there must be a limit to the admission of opinions, and that the witness can not substitute his judgment for that of the tribunal to whom the law has committed the decision of the fact, it was said: "We think the limit may be drawn without any difficulty, and consistently with the habitual practice of courts. Whenever the opinion of the witness upon such a question, or on one coming under the same rule, is the *direct* result of observation through his senses, the evidence is admitted. * * * But if the opinion

Boyle *v.* The State.

of the witness is the result of a course of reasoning from collateral facts, it is inadmissible. * * * In such a case the tribunal is as competent to reason out the resultant opinion as the witness is; and by the theory of law, it alone is competent to do so. To allow any influence to the opinion of the witness would be *unnecessarily* to substitute him to the function of the tribunal." See, also, *Ferguson* v. *Hubbell*, 97 N. Y. 507 (49 Am. R. 544); *Bissell* v. *Wert*, 35 Ind. 54.

To say that Casey's declaration was "the statement of a conclusion of fact from observed facts," does not help the case. It was not for him to draw conclusions from the facts, and state them instead of the facts. It was the province of the jury to draw the conclusions, and to do that, the facts, and not the conclusions, should have been stated by Casey. A conclusion from facts by a witness, in my judgment, is nothing more nor less than an opinion upon those facts. The witness must know the facts, weigh them, and reason about them, and whether he says after this, I conclude that there was no reason for the shooting, or in my opinion there was no reason for the shooting, is all the same. The mental process by which the conclusion is reached is the same, and the result is the same however it may be declared.

Dying declarations, of course, must be limited and confined to the circumstances forming a part of the *res gestæ*. They can not relate to what preceded, nor to what followed the shooting, unless so close in time and connection as to be a part of the *res gestæ*. *Montgomery* v. *State, supra.* Now, what did or what could have occurred in connection with the shooting, that Casey could not have related? Is it possible that there was anything that he could not have related, which in any proper way could have produced, or contributed in producing, the conclusion or opinion that appellant had no reason for the shooting? Was there anything, could there have been anything, connected with the shooting to create the necessity for admitting the conclusion or opinion of Casey instead of, and unaccompanied by, the facts? What was done

and what was said, could easily have been related. I can imagine nothing else upon which Casey could rest a conclusion that there was no reason for the shooting. If there was no disagreement, and no angry words, he could have so stated. If he made no assault and no threats, he could have so stated. If Casey had made the statement as a witness upon the stand, every fact upon which he based his conclusion could have been developed by a cross-examination. If so, the facts, and not the conclusions, should have been given in the declaration. Surely, if a witness can state all the facts which determine the question of the public utility of a highway, the facts which will determine whether or not appellant had a reason for the shooting can be stated. And if a witness may not give his opinion as to whether or not a highway will be of public utility, surely he should not be allowed to give his opinion in a case like this, involving life and liberty, and where there is no opportunity for a cross-examination.

When Casey declared there was no reason, in answer to the question put to him, he went beyond the *res gestæ*, and covered everything that might have operated as a reason, whether immediately connected with the shooting or preceding it.

It is further stated in the principal opinion that the declaration was the statement of a negative fact, and that negative facts can only be proven by a denial. I respectfully submit that this assumes the point in controversy. A negative fact, it may be, can be proven by a denial; but a negative conclusion can not. There are many conclusions that might as well be called negative facts as the declaration under discussion. For example, a person's real estate is assessed as benefited by the construction of a drain, or the opening or repairing of a street. He claims that it is not benefited at all. The other party claims that it is. Whether or not it is benefited, and if so, how much, are questions to be settled by the trial. That it is not, is the negative which the owner seeks to establish. The other party can not have his witnesses state how much it is benefited. *Yost* v. *Conroy, supra.*

And where the issue is benefit or no benefit, such witnesses can not state that the lands are benefited. It seems to me that it must be equally clear that the owner can not, on the plea that he wishes to prove a negative fact, have his witnesses testify that it is not benefited at all, because that must be a conclusion, dependent upon primary facts. The facts, and not the conclusion, should be given to the jury.

The principal opinion distinguishes between the existence of a reason and the existence of a sufficient or insufficient reason, and holds that a witness may state that there was no reason, because he thereby but states a fact, and that he can not state that there was a sufficient or insufficient reason, because he would thereby express an opinion. In my judgment, the difference is in degree and not in quality. In either case, the witness must reason from the primary facts. If he says there was no reason, he expresses a conclusion and opinion. If he says there was no sufficient reason, he expresses a double conclusion and opinion; one as to the existence and the other as to the sufficiency of the reason. The declaration that appellant "had no reason that I know of," I submit, shows upon its face that Casey was not stating a fact, but an opinion. And for such an opinion a witness could not be convicted upon the charge of perjury, however unfounded it might be, because it is not the statement of a fact. *Commonwealth* v. *Brady*, 5 Gray, 78. Finally, I think I am supported in my conclusion in this case, by the case of *Montgomery* v. *State*, 80 Ind. 338, already cited. In that case death resulted from an attempt to produce an abortion. It was held that the death was the subject of inquiry, and that hence it was a case for the admission of dying declarations. The dying declaration was that "the operation was performed for the purpose of producing an abortion." It was held that this declaration should have been excluded. It was said: "What the purpose of an act was is an inference from facts, and witnesses must state the facts, and not their conclusions. A witness would have been required to state

---

what was said and done. Facts are to be stated by witnesses; inferences to be made by the jury. This rule should be applied with jealous care to dying declarations. As the accused can not cross-examine, there are no means of testing the correctness of the conclusion. It may be entirely without any foundation in fact. But we need not discuss this question, for it is well settled that dying declarations must speak to facts only, and not to mere matters of opinion." I submit that the declaration in that case comes as near being the statement of a fact as the declaration in this case. The mental process necessary to reach the conclusion in that case would be less complicated than that required to reach the conclusion declared by Casey. In this case as in that, it was improper for the declarant to state inferences from facts. In this case as in that, the declarant should have stated what was done and said. In this case as in that, facts were to be stated by the witness, and inferences to be made by the jury. In this case as in that, the conclusion by the declarant may be entirely without foundation.

The cases are not in all respects the same, but in my judgment, I am right here, or the reasoning there is unsound. I think that I am correct in my position in this case, and that the reasoning there is sound, and supported by authority everywhere.

MITCHELL, J., concurs in the dissenting opinion.

